NATIONAL LABOR RELATIONS BOARD *v.*
INDUSTRIAL UNION OF MARINE &
SHIPBUILDING WORKERS OF
AMERICA, AFL–CIO, ET AL.

No. 796.   Argued April 30, 1968.—Decided May 27, 1968.

*Norton J. Come* argued the cause for petitioner. With him on the brief were *Solicitor General Griswold, Arnold Ordman,* and *Dominick L. Manoli.*

*M. H. Goldstein* argued the cause and filed a brief for respondents.

*Kenneth C. McGuiness* and *Stanley R. Strauss* filed a brief for Price, as *amicus curiae,* urging reversal.

*J. Albert Woll, Laurence Gold,* and *Thomas E. Harris* filed a brief for the American Federation of Labor and Congress of Industrial Organizations, as *amicus curiae,* urging affirmance.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

One Holder, a member of respondent unions, filed with the National Labor Relations Board an unfair labor practice charge, alleging that Local 22 had violated § 8 (b)(1)(A) of the National Labor Relations Act,[1] 61

---

[1] Section 8 (b) provides in part: "It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own

Stat. 141, 29 U. S. C. § 158 (b)(1)(A), by causing his employer to discriminate against him because he had engaged in protected activity with respect to his employment.[2] The filing of this charge followed an accusation by Holder to Local 22 that its president had violated the constitution of the International. The local decided in favor of its president; but Holder did not pursue the intra-union appeals procedure that was available to him and filed the unfair labor practice charge instead, based on the same alleged violations by the president.

Section 5 of Article V of the constitution of the International Union, which was binding on Local 22, contained the following provision relative to grievances of union members:

"Every member . . . considering himself . . . aggrieved by any action of this Union, the [General

rules with respect to the acquisition or retention of membership therein . . . ."

Section 7, 61 Stat. 140, 29 U. S. C. § 157, contains the following guarantee of rights: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8 (a)(3)."

[2] This charge, filed with the Board February 28, 1964, was directed solely against respondent International Union and alleged that:

"On or about October 8, 196[3], the above named labor organization caused the United States Lines [employer] to discriminate against Edwin D. Holder because he engaged in concerted activities with respect to the conditions of his employment.

"By these and other acts, the above named labor organization has interfered with, restrained and coerced, and continues to interfere with, restrain and coerce the Company's employees in the exercise of rights guaranteed in Section 7 of the Act."

By letter of May 20, 1964, the Regional Director informed Holder that this charge was dismissed.

Executive Board], a National Officer, a Local or other subdivision of this Union shall exhaust all remedies and appeals within the Union, provided by this Constitution, before he shall resort to any court or other tribunal outside of the Union."

While Holder's charge was pending before the Board, Local 22 lodged a complaint in internal union proceedings against Holder alleging he had violated § 5 of Article V of the International's constitution by filing his charge with the Board before he had exhausted his internal remedies. After a hearing before Local 22, Holder was found guilty and expelled from both respondent unions. He then appealed to the General Executive Board of the International which affirmed the local's action on October 7, 1964.

On October 28, 1964, Holder filed a second charge with the Board, claiming his expulsion for filing the first charge was unlawful. That charge is the basis of the instant case.

A complaint issued; and the Board found that the respondent unions had violated § 8 (b)(1)(A) of the Act by expelling Holder for filing a charge with the Board without first having exhausted the intra-union procedures. 159 N. L. R. B. 1065. It issued a remedial order, which the Court of Appeals refused to enforce. 379 F. 2d 702. The case is here on writ of certiorari. 389 U. S. 1034.

The important question is whether consistent with the applicable federal statutes a union may penalize one of its members for seeking the aid of the Board without exhausting all internal union remedies. There is a threshold question, however, concerning the adequacy of Holder's first or original charge to the Board against respondents. Holder charged discrimination practiced against him because, to use the words of the Regional Director as he paraphrased the charge in the complaint,

Holder had engaged "in certain protected activity" of an unspecified nature "with respect to his employment." It is pointed out that § 8 (b)(1)(A) protects only "the exercise of rights guaranteed by section 7"; [3] and that § 7 "says nothing about any right to file charges with the Board." 379 F. 2d, at 706. That, however, is not the issue. The charge by Holder that he was discriminated against because he had engaged "in certain protected activity" was a sufficent way to allege an impairment of § 7 rights. "The charge is not proof. It merely sets in motion the machinery of an inquiry." *NLRB* v. *Indiana & Michigan Electric Co.,* 318 U. S. 9, 18. Moreover, no issue was raised before the Board concerning the nature of the "protected activity." The answer of respondents insofar as the original charge is concerned said only that the charge made by Holder to the Board was based upon precisely the same facts as those on which his internal union charges against the president of the Local had been based. We must, therefore, assume that the initial charge was one within the ambit of § 7 and so plainly within it that no party undertook to question it.

The main issue in the case is whether Holder could be expelled for filing the charge with the Board without first having exhausted "all remedies and appeals within the Union" [4] as provided in § 5 of Article V of the constitution, already quoted.

---

[3] N. 1, *supra.*

[4] These remedies are provided for in § 3 of Article V of the constitution:

"No Union member in good standing in any Local may be suspended or expelled or otherwise disciplined or penalized without a fair and open trial, of which reasonable notice shall be given the accused member, before the Trial Board of the Local Union . . . . The accused member or members or the accusers may appeal the decision of the local Union's Executive Board to the regular meeting of the General Membership of the Local Union next follow-

Section 8 (b)(1)(A) in its proviso [5] preserves to a union "the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein."

The Court of Appeals concluded that while this proviso would not permit a union to expel a member because he filed an unfair labor practice charge against the union, it permits a rule which gives the union "a fair opportunity to correct its own wrong before the injured member should have recourse to the Board." 379 F. 2d, at 707.

We held in *NLRB* v. *Allis-Chalmers Mfg. Co.*, 388 U. S. 175, that § 8 (b)(1)(A) does not prevent a union from imposing fines on members who cross a picket line created to implement an authorized strike. The strike, we said, "is the ultimate weapon in labor's arsenal for achieving agreement upon its terms" and the power to fine or expel a strikebreaker " 'is essential if the union is to be an effective bargaining agent.' " *Id.*, at 181.

---

ing the meeting of the Executive Board at which the decision was rendered, and within thirty (30) days after the membership's decision may appeal to the General Executive Board. The General Executive Board shall, after reasonable notice to the appellant of the time and place of hearing, hold a fair and open hearing on such appeal and, not later than 130 days after the first regular meeting of the General Executive Board following receipt of the appeal at the National Office, and in any event not later than the first day of the National Convention, shall render its decision affirming, overruling, or modifying either the findings of guilt or innocence, or the penalty imposed. Both the accused and the accuser shall have the right to file an appeal to the next National Convention by sending such appeal to the National Office of this Union by registered mail not later than thirty days after the decision by the General Executive Board."

Although Holder did not take any internal appeal from the local's original adverse decision on his charge to it against the president, he did appeal his expulsion to the General Executive Board of the International, which affirmed.

[5] N. 1, *supra.*

Thus § 8 (b)(1)(A) assures a union freedom of self-regulation where its legitimate internal affairs are concerned. But where a union rule penalizes a member for filing an unfair labor practice charge with the Board, other considerations of public policy come into play.

Section 10 (b) of the Act, 61 Stat. 146, 29 U. S. C. § 160 (b), forbids issuance of a complaint based on conduct occurring more than six months prior to filing of the charge—a provision promoting promptness. A proceeding by the Board is not to adjudicate private rights but to effectuate a public policy. The Board cannot initiate its own proceedings; implementation of the Act is dependent "upon the initiative of individual persons." *Nash* v. *Florida Industrial Comm'n,* 389 U. S. 235, 238. The policy of keeping people "completely free from coercion," *ibid.,* against making complaints to the Board is therefore important in the functioning of the Act as an organic whole. A restriction such as we find in § 5 of Article V of the International's constitution is contrary to that policy, as it is applied here. A healthy interplay of the forces governed and protected by the Act means that there should be as great a freedom to ask the Board for relief as there is to petition any other department of government for a redress of grievances.[6] Any coercion used to discourage, retard, or defeat that access is beyond the legitimate interests of a labor organization. That was the philosophy of the Board in the *Skura* case, *Local 138, International Union of Operating Engineers,* 148 N. L. R. B. 679; and we agree that the overriding public interest makes unimpeded access to the Board the only healthy alternative, except and unless plainly internal affairs of the union are involved.

---

[6] See Cox, Internal Affairs of Labor Unions under the Labor Reform Act of 1959, 58 Mich. L. Rev. 819, 839 (1960); Summers, Legal Limitations in Union Discipline, 64 Harv. L. Rev. 1049, 1067–1068 (1951); Summers, The Usefulness of Law in Achieving Union Democracy, 48 Am. Econ. Rev. 44, 47 (May 1958).

In the present case a whole complex of public policy issues was raised by Holder's original charge. It implicated not only the union but the employer. The employer might also have been made a party and comprehensive and coordinated remedies provided. Those issues cannot be fully explored in an internal union proceeding. There cannot be any justification to make the public processes wait until the union member exhausts internal procedures plainly inadequate to deal with all phases of the complex problem concerning employer, union, and employee member. If the member becomes exhausted, instead of the remedies, the issues of public policy are never reached and an airing of the grievance never had. The Court of Appeals recognized that this might be the consequence and said that resort to an intra-union remedy would not be required if it "would impose unreasonable delay or hardship upon the complainant." 379 F. 2d, at 707.

The difficulty is that a member would have to guess what a court ultimately would hold. If he guessed wrong and filed the charge with the Board without exhausting internal union procedures, he would have no recourse against the discipline of the union. That risk alone is likely to chill the exercise of a member's right to a Board remedy and induce him to forgo his grievance or pursue a futile union procedure. That is the judgment of the Board; and we think it comports with the policy of the Act. That is to say, the proviso in § 8 (b)(1)(A) that unions may design their own rules respecting "the acquisition or retention of membership" is not so broad as to give the union power to penalize a member who invokes the protection of the Act for a matter that is in the public domain and beyond the internal affairs of the union.

The Court of Appeals found support for its contrary position in § 101 (a)(4) of the Labor-Management Re-

porting and Disclosure Act of 1959.[7]  73 Stat. 522, 29 U. S. C. § 411 (a)(4).  While that provision prohibits a union from limiting the right of a member to institute an action in any court or in a proceeding before any administrative agency, it provides that a member "may be required to exhaust reasonable hearing procedures" "not to exceed a four-month lapse of time."

We conclude that "may be required" is not a grant of authority to unions more firmly to police their members but a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union.  We read it, in other words, as installing in this labor field a regime comparable to that which prevails in other areas of law before the federal courts, which often stay their hands while a litigant seeks administrative relief before the appropriate agency.[8]

---

[7] Section 101 (a)(4) provides: "No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency . . . or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings . . . ."

[8] See *Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U. S. 41; compare *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496.  The requirement of exhaustion is a matter within the sound discretion of the courts. See, *e. g., McCulloch* v. *Sociedad Nacional,* 372 U. S. 10, 16–17. And see *Leedom* v. *Kyne,* 358 U. S. 184, 188–189; *California Comm'n* v. *United States,* 355 U. S. 534, 539–540. Exhaustion is not required when the administrative remedies are inadequate. *Greene* v. *United States,* 376 U. S. 149; *McNeese* v. *Board of Education,* 373 U. S. 668. See generally 3 K. Davis, Administrative Law Treatise § 20.07 (1958). When the complaint, as in the instant case, raises a matter that is in the public domain and beyond the internal affairs of the union, the union's internal procedures are, as previously explained, plainly inadequate.

The legislative history is not very illuminating. Some members of the House who spoke indicated that there was room for judicial discretion whether to remit the member to available internal union remedies.[9] In the Senate the fear was expressed that the new section would give unions power to punish their members for filing charges with the Board prior to exhaustion of their internal remedies.[10] In the Senate the continuance of union grievance procedures under the new section was emphasized.[11] It was indeed expressly stated by Senator John F. Kennedy reporting from the Conference Committee: [12]

> "The 4-month limitation in the House bill also relates to restrictions imposed by unions rather than the rules of judicial administration or the action of Government agencies."

Yet it plainly appears from those speaking for the Conference Report that a member was to be permitted to complain to the Board even before the end of the four-month period. Congressman Griffin reported: [13]

> "[T]he proviso was not intended to limit in any way the right of a union member under the Labor-Management Relations Act of 1947, as amended, to file unfair labor practice charges against a union, or the right of the NLRB to entertain such charges, even though a 4-month period may not have elapsed."

And on the Senate side, Senator Kennedy said that the proviso was not intended "to invalidate the consid-

---

[9] 105 Cong. Rec. 15835 (McCormack); *id.*, at 15689–15690 (O'Hara); *id.*, at 15563 (Foley).

[10] 105 Cong. Rec. 10095 (Goldwater).

[11] 105 Cong. Rec. 17899 (John F. Kennedy).

[12] 105 Cong. Rec. 17899.

[13] 105 Cong. Rec. 18152.

erable body of State and Federal court decisions of many years standing which require, *or do not require,* the exhaustion of internal remedies prior to court intervention *depending upon the reasonableness of such requirements in terms of the facts and circumstances of a particular case."* (Emphasis added.) Nor, he said, was it intended to prohibit "the National Labor Relations Board . . . from entertaining charges by a member against a labor organization even though 4 months has not elapsed." [14]

We conclude that unions were authorized to have hearing procedures for processing grievances of members, provided those procedures did not consume more than four months of time; but that a court or agency might consider whether a particular procedure was "reasonable" and entertain the complaint even though those procedures had not been "exhausted." We also conclude, for reasons stated earlier in this opinion, that where the complaint or grievance does not concern an internal union matter, but touches a part of the public domain covered by the Act, failure to resort to any intra-union grievance procedure is not ground for expulsion from a union. We hold that the Board properly entertained the complaint of Holder and that its order should be enforced.

*Reversed.*

MR. JUSTICE STEWART dissents. He would affirm the judgment, agreeing substantially with the opinion of the Court of Appeals for the Third Circuit. 379 F. 2d 702.

MR. JUSTICE HARLAN, concurring.

I am persuaded by the legislative history, summarized in part by the Court, that the proviso to § 101 (a)(4) of the Labor-Management Reporting and Disclosure Act,

---

[14] 105 Cong. Rec. 17899.

29 U. S. C. § 411 (a)(4), was intended simply to permit a court or agency to require a union member to exhaust internal union remedies of less than four months' duration before invoking outside assistance. See generally *Detroy* v. *American Guild of Variety Artists,* 286 F. 2d 75, 78. I cannot, however, agree that a union may punish a member for his invocation of his remedies before a court or agency "where the complaint or grievance . . . concern[s] an internal union matter," and thus does not touch any "part of the public domain covered by the Act . . . ." *Ante,* at 428. Assuming *arguendo* that there are member-union grievances untouched by the various federal labor statutes, this dichotomy has, it seems to me, precisely the disadvantage that the Court has found in the Third Circuit's construction of the proviso: it compels a member to gamble his union membership, and often his employment, on the accuracy of his understanding of the federal labor laws.

Finally, it is appropriate to emphasize that courts and agencies will frustrate an important purpose of the 1959 legislation if they do not, in fact, regularly compel union members "to exhaust reasonable hearing procedures" within the union organization. Responsible union self-government demands, among other prerequisites, a fair opportunity to function.* See *Detroy* v. *American Guild of Variety Artists, supra,* at 79.

With these modifications, I concur in the opinion and judgment of the Court.

---

*It should be noted that many union constitutions have elaborate provisions for internal appeals, and that these provisions were often added or modified as a consequence of § 101 (a)(4). See Kroner, Title I of the LMRDA: Some Problems of Legal Method and Mythology, 43 N. Y. U. L. Rev. 280, 302, n. 72.