**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA and Dallas General Drivers, Warehousemen and Helpers Local Union 745, Respondents.**

**No. 71–3576.**

United States Court of Appeals, Fifth Circuit.

June 23, 1972.

---

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Elmer P. Davis, Director, Region 16, N. L. R. B., Fort Worth Tex., Baruch Fellner, Atty., N.L.R.B., Washington, D. C., for petitioner.

L. N. D. Wells, Jr., Dallas, Tex., for respondents.

Before DYER, Circuit Judge, SKELTON,* Judge, and INGRAHAM, Circuit Judge.

DYER, Circuit Judge:

This is an application by the Board for enforcement of its order entered against Local 745 and the International Brotherhood of Teamsters. The Board found that the Local, through Secretary-Treasurer Piland, had unlawfully coerced and restrained certain union members by threatening to sue them for expenses incurred in defending against charges filed by them with the Board against the local in violation of Section 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. Participation of the International in the violation was based upon the presence of International representatives at the union meeting at which the alleged threat occurred and the failure of the representatives to object to the Secretary-Treasurer's remarks. We have determined that the remarks, in the context in which they were delivered, did not constitute a threat of reprisal against the filing members. Accordingly, enforcement is denied.

On May 6, 1970, approximately 60 members of the Local began a wildcat work stoppage at the Dallas, Texas terminal of Red Ball Motor Freight, Inc., The Local and the Company were parties to a collective bargaining agreement containing a no-strike clause. After unsuccessful efforts at conciliation by the Local and the Company, some of the striking employees including Charles Shields, the charging party, were dismissed pursuant to the no-strike provision. Shields, with several other discharged members, filed grievances under the bargaining agreement which were promptly heard and dismissed.

Unsatisfied with the representation they were receiving from the Local, the employee-members then filed charges with the Board, alleging that the Union had restrained them in the exercise of their grievance rights under Section 7 of the Act in violation of § 8(b) (1) (A). Local 12, United Rubber, etc. Workers v. N. L. R. B., 5 Cir. 1966, 368 F.2d 12, cert. denied, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99.

These events were followed on June 7, 1970, by the regular monthly meeting of the Local where the alleged threat was made. Shields and the other filing members were present at the meeting. Developments in the strike were discussed against a backdrop of emotion, punctuated by heated exchanges between striking and non-striking members. Early in

* Judge Byron G. Skelton, U.S. Court of Claims, sitting by designation.

the meeting Piland gave a report to the membership about the May 13, 1970, meeting of the Local's Executive Board, and its discussion of the wildcat work stoppage. Following Piland's comments, one of the union members moved that the wildcatters be expelled from the union for not having pursued their complaints solely through the internal grievance machinery of the Union. Piland then resumed the podium and made the remarks which precipitated the Board's order. According to the minutes of the meeting,

[P]iland . . . advised the membership the Executive Board had directed him and it was his intention to follow through with their instructions that in his opinion allow him under the International Constitution to sue the Red Ball employees for whatever expenses were involved protecting the Local Union in the lawsuits that were filed because the Local Union had tried to get the employees to go back to work and if they had done this, they would not have been fired.

The International Constitution, referred to by Piland, provides in pertinent part that every union member against whom disciplinary action has been taken is obliged to exhaust all internal remedies prescribed in the International Constitution before resorting to any court, tribunal, or agency against the Local or the International.[1] If a member files a court action and loses, all costs and expenses incurred by the International Union may be assessed against the member in the nature of a fine.[2]

■ We have concluded that there is no substantial evidence to support the Board's determination that Piland's remarks were threatening or constituted a restraint and coercion in violation of § 8(b) (1) (A). In the context of the heated discussion which took place at the June 7 meeting, the comments made by Piland were clearly spontaneous. They were not made at the direction of the Executive Board, but were designed only to gain support for the contract commitments of the union not to strike, and made in the exercise of "union freedom of self-regulation where its . . . internal affairs are concerned." N. L. R. B. v. Industrial Union of Marine & Shipbuilding Workers, etc., Local 22, 1968, 391 U.S. 418, 424, 88 S.Ct. 1717, 1721, 20 L.Ed.2d 706.

■ Moreover, we do not agree with the Board that Piland's remarks referred only to the filing of charges with the Board. They were ambiguous to say the least and must be considered in connection with the language of the Minutes and the fact that he made no reference to the failure to exhaust internal remedies. The Board's characterization of Piland's remarks as threatening, isolated as they were, in the midst of a lengthy and emotional union meeting, would, if permitted to stand, unduly inhibit the important national policy expressed in Title I of the Landrum-Grif-

1. ARTICLE XIX
TRIALS AND APPEALS
✻ * * * *
Exhaustion of Remedies
Section 12(a). Every member, officer, elected Business Agent, Local Union, Joint Council or other subordinate body against whom charges have been preferred and disciplinary action taken as a result thereof, or against whom adverse rulings or decisions have been rendered or who claims to be aggrieved, shall be obliged to exhaust all remedies provided for in this Constitution and by the International Union before resorting to any court, tribunal or agency against the International Union, any subordinate body or any officer or any employee thereof.

2. Exhaustion of remedies
Section 12(b). Where a member, officer, elected Business Agent, Local Union, Joint Council or other subordinate body, before or following exhaustion of all remedies provided for within the International Union, resorts to a court of law and loses his or its cause therein, all costs and expenses incurred by the International Union shall be assessed againt such individual, Local Union, Joint Council or other subordinate body, in the nature of a fine, subject to all penalties applicable where fines remain unpaid.

fin Act, 29 U.S.C.A. § 411 et seq., to assure strong and full exchange of views, positions and opinions in labor meetings. *See* Sewell v. Grand Lodge, etc., 5 Cir. 1971, 445 F.2d 545, 551. We agree with the Local that the Board arrived at a topsy-turvy result by which the statute, designed to diminish strikes and promote industrial peace by fidelity to labor agreements, was twisted into the basis of an injunction against the union which was striving mightily to cool hot-headed wildcat strikers and attain compliance with no-strike commitments. The record as a whole does not support such a result.[3]

Enforcement denied.

3. The disposition we have made of the case with respect to the Local Union pretermits the necessity for discussing the charges against the International.