**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL NO. 18, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO and Its Agents, et al., Respondents.**

No. 73-2117.

United States Court of Appeals, Sixth Circuit.

Argued April 9, 1974.

Decided Oct. 8, 1974.

Frank Morris, N. L. R. B., for petitioner; Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Robert A. Giannasi, Asst. Gen. Counsel, Washington, D. C., on brief.

Jeffrey A. Belkin, Belkin & Belkin Co., L.P.A., Cleveland, Ohio, for respondents.

Before EDWARDS, CELEBREZZE and LIVELY, Circuit Judges.

EDWARDS, Circuit Judge.

The National Labor Relations Board applies for enforcement of its order against Local No. 18 of the International Union of Operating Engineers, AFL-CIO, reported at 205 N.L.R.B. # 75 (1973). The Board had found that the union had conducted "secondary" picket lines at two construction sites, in violation of §§ 8(b)(4)(i) and 8(b)(4)(ii)(B) of the National Labor Relations Act, 29 U.S.C. § 151, et seq., (1970) and had "coerced" three union members for crossing the picket line, in violation of § 8(b)(4)(B) of the Act.

In this case the union was engaged in seeking to unionize or keep off of union jobs a nonunion subcontractor known as B. D. Morgan & Co., which also owned a heavy equipment rental company named Mecco. Mecco and Morgan had previously had a contract with the Operating Engineers. After a strike in 1969 the contract was never renewed, and Morgan and Mecco did not subsequently pay union wages or fringe benefits.

In early 1972 Morgan and Mecco secured a contract with the general contractor on work at the Hill's Department Store site in Middletown, Ohio. The union, after warning the general contractor and various subs that they would not work with Morgan and Mecco, picketed the site with signs addressed only to Mecco. The picketing resulted in the stopping of work by all union men on the project, although the Mecco men continued to work. As to this and a somewhat similar episode in the same area on another department store construction project called "the Rink's job," it is the union's claim that the picketing was entirely directed at Mecco, that it was entirely primary and, hence, lawful, and that if there was any secondary fallout,

this was incidental and did not detract from the legality of the primary picketing. The Board found that in fact the picketing was in the nature of a secondary boycott at both construction sites, in violation of § 8(b)(4) of the Act, in spite of the union's argument that the activities there engaged in were completely protected by the proviso in paragraph B of that section.

■ As to the Board's finding of 8(b)(4) violations there was testimony of union threats to neutral employers to close the jobs unless Morgan and Mecco were removed, and in fact union members not involved in the primary dispute backed these threats by striking. This is substantial evidence on the whole record to support the Board's position on this issue.

The more difficult question in this case, however, pertains to the union's subsequent charges against three Morgan and Mecco employees who worked during the picketing on both of these sites. The charges originally were drawn against the three employees reciting 1) their violation of "an authorized picket line of Local 18," and 2) alleging that they had worked at nonunion wages and for a nonunion employer. On advice of counsel the first charge was withdrawn. All three men were found guilty on the second charge. They were expelled from the union and assessed $100 fines. The union claims that its actions in this regard were authorized by the United States Supreme Court's holdings in NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967); NLRB v. Marine Workers Union, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); and Scofield v. NLRB, 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969).

The union's contention is that all three of these employees were proved to have worked nonunion against the union's request and were proved to have accepted and continued to work under conditions which adversely affected union standards. The union also contends that in any event the picketing was primary and was directed at Morgan and Mecco, that these men nonetheless continued to work, and that under these circumstances the cases cited above authorize union expulsion and fine.

This area of the labor law is extremely difficult. There were conflicting pressures upon Congress in the enactment of the NLRA in 1935 and in its amendment in the Taft-Hartley Act of 1947.[1] And these conflicting pressures are mirrored in statutory provisions which directly affect this case. Thus, § 8(b)(1)(A) provides:

"(b) It shall be an unfair labor practime for a labor organization or its agents—

1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided, that this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein.*" 29 U.S.C. § 158(b)(1)(A) (1970). (Emphasis supplied.)

The importance of the proviso in § 8(b)(1)(A) is shown in the following statement of Senator Robert Taft during debate on the bill:

"The pending measure does not propose any limitation with respect to the internal affairs of unions. They still will be able to fire any members they wish to fire, and they still will be able to try any of their members. All that they will not be able to do, after the enactment of this bill, is this: If they fire a member for some reason other than nonpayment of dues they cannot make his employer discharge him from his job and throw him out of work. That is the only result of the provision under discussion." 93 Cong.Rec. 4193; II Legislative History of the Labor-Management Relations Act of 1947 at 1097.

The Supreme Court has given effect to this proviso of § 8(b)(1)(A) in two important cases which upheld the right

---

1. Act of June 23, 1947 ch. 120, 61 Stat. 136.

of unions to fine and expel union members who served as strike breakers. NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967); Scofield v. NLRB, 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969).

In this last case, however, the Supreme Court recognized the National Labor Relations Board's right to restrain union conduct which "invades or frustrates an overriding policy of the labor laws." In pursuance of this concept, the Supreme Court held that where a union employs a union penalty against a member for filing charges with the NLRB, such a penalty tended to invade or frustrate the overriding policy of free access to the basic agency created to supervise and enforce the labor laws. NLRB v. Marine Workers Union, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).

The Supreme Court's concern here involved a very fundamental aspect of national labor policy. If interunion discipline can be used successfully to keep union members from complaining about violation of their rights, there may be no way to vindicate the labor policies adopted by Congress. Thus far, however, the Supreme Court has not extended its restriction upon the broad language of the proviso in § 8(b)(1)(A) beyond the facts of the *Marine Workers Union* case. We recognize that the National Labor Relations Board has done so in two cases. Glaziers Local 1162, Brotherhood of Painters (Tusco Glass, Inc.), 177 N.L.R.B. 393 (1969); Local 12419, Int. Union of Dist. 50 (Nat'l Grinding Wheel Co.), 176 N.L.R.B. 628 (1969).

Whether these cases illustrated instances where interunion discipline was used to "invade or frustrate an overriding policy of the labor laws," we do not need to decide here. We do not think either the broad language of the proviso or the more restrictive language of the Supreme Court validates the result reached by the Board in this case.

■ First, we note that the Board's result is planted in major part upon the following non sequitur: "In this case,

where, as has been found, the Union's picket line at the Hill's job was illegal, it would have been unprotected activity for Graham, Perry and Taulbee to have honored such picketing." Actually, of course, these three union members were working for a nonunion contractor that the union had every right to picket since the dispute with Morgan and Mecco was entirely primary. As is obvious from our holding as to the first issue in this case, we neither ignore nor disagree with the Board's findings which held the union picket line was also employed, by oral interpretation and threats, as a secondary boycott device to put pressure on neutral employers. But these three union members were not employees of neutrals. They and their employer were the source of the primary dispute. They could have responded to the picket signs directed against Mecco alone by quitting work without any secondary boycott resulting from their so doing. If they had not only quit work themselves but also had joined in pressuring other employees of neutral employers to strike, their conduct then would have violated § 8(b)(1)(A) and would have been subject to restraint. Clearly they did not do so.

Another reason for our disinclination to enforce the Board's invasion of interunion discipline in this case is that the proviso which restrains such invasion was placed by Congress in immediate juxtaposition to its prohibition against restraint or coercion of employees in exercise of § 157 rights which include the right to work nonunion. As noted above, the full and applicable text of § 8(b)(1)(A) is:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

1) to restrain or coerce (A) employees in the exercise of the right guaranteed in section 157 of this title: *Provided*, that this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." 29 U.S.C. § 158(b)(1)(A) (1970).

784

This section seems to us to mean that the Board can restrain threats or physical violence or secondary boycotts against union members who cross a picket line but cannot keep the union from expelling them.

Finally, Congress has provided measures to eliminate the threat of secondary boycotts other than banning a union's discipline of its own membership. It has authorized injunctive relief against such measures. 29 U.S.C. § 158(b)(4); 29 U.S.C. § 160(a), (c) & (*l*) (1970). It has also authorized suits for damages against unions who violate this policy. 29 U.S.C. § 187 (1970).

We do not disagree with the Board's finding that the union's action in this case was triggered by these three employees' work on the Hill's and Rink's jobs. But as a matter of law, we believe that the union discipline which was invoked was protected from Board action by the proviso to § 8(b)(1)(A).

Enforcement of the Board's order is granted, except as to paragraphs 1(c) and 2(a) and (b).