## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## RETAIL CLERKS UNION, LOCAL 1179, RETAIL CLERKS INTERNATIONAL ASSOCIATION, AFL–CIO, Respondent.

### No. 74–2638.

United States Court of Appeals, Ninth Circuit.

Nov. 24, 1975.

---

Allen Cirker (argued), N.L.R.B., Washington, D.C., for petitioner.

David Nevins (argued), of Davis, Cowell & Bowe, San Francisco, Cal., for respondent.

## OPINION

Before CARTER, GOODWIN and KENNEDY, Circuit Judges.

ANTHONY M. KENNEDY, Circuit Judge:

In this case we consider whether a union's exercise of discipline over certain of its members constitutes an unfair labor practice prohibited by section 8(b)(1)(A)

of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A). The Labor Board concluded that it was contrary to national labor policy for the Retail Clerks Union to punish members who failed to observe another union's unlawful picket line. Thus the union discipline was held not to be a purely internal matter beyond the reach of section 8(b)(1)(A). 211 N.L.R.B. No. 16 (1974). We agree and accordingly grant enforcement of the Board's order.

In September 1972 the Teamsters Union engaged in picketing Alpha Beta-Acme Markets [Alpha Beta], claiming that Alpha Beta was violating "area standards" of employment in using bakery drivers from Southern California to serve its stores in Contra Costa County. This picketing was sanctioned in advance by the Central Labor Council of Contra Costa County. Retail Clerks Local 1179 was advised by its attorneys that the Teamsters' picketing appeared to be lawful and that in any case the clerks employed at Alpha Beta had a right to honor the picket lines even if they turned out to be unlawful. In compliance with the Central Labor Council's request, Clerks Local 1179 instructed its members not to cross the picket lines at the Alpha Beta stores. Pursuant to unfair labor practice charges filed by Alpha Beta, the NLRB issued a complaint against the Teamsters and obtained a federal injunction halting the picketing. The Teamster picketing was subsequently held to have violated section 8(b)(7) of the Act. *Alpha Beta-Acme Markets, Inc.,* 205 N.L.R.B. 462 (1973).

The picketing and sympathy strike lasted about two weeks. During that time, Gregory Pereira and other members of Local 1179 crossed the picket lines and continued to work at an Alpha Beta store. Later the union brought charges, held hearings and fined Pereira and 69 other members for working behind the picket lines in violation of union bylaws. Twenty-three of these fines, including Pereira's, remained unpaid, and the union sought and obtained judgments for the amount due in California

small claims court. Because of failure to pay the fines, the union also refused to transfer the membership of Pereira and two other members who moved to Alpha Beta stores under the jurisdiction of a different Retail Clerks local union.

The Board's regional director issued a complaint against Clerks Local 1179, based on Pereira's unfair labor practice charge. After a hearing at which the essential facts were stipulated by the parties, the administrative law judge concluded that Clerks Local 1179 violated section 8(b)(1)(A) of the Act by taking punitive actions against members who failed to observe the sympathy strike against Alpha Beta. The Board affirmed this decision and ordered the union to rescind all punishments imposed, refund the fines collected, have the state court proceedings dismissed, expunge relevant records, and post appropriate notices. The case is before this court upon application of the Board for enforcement of its order.

## I.

Section 8(b) of the Act provides in relevant part:

It shall be an unfair labor practice for a labor organization or its agents—

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in [section 7]: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein . . . .

Among the rights guaranteed in section 7 are the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection" and the right to refrain from such activities except to the extent certain agreements may require union membership as a condition of employment. 29 U.S.C. § 157.

These provisions have not received a literal interpretation by the Supreme Court. Relying on legislative history indicating that section 8(b)(1)(A)

was primarily directed at union organizing campaigns, the Court has held that it does not affect the union's conduct of purely internal affairs. This internal affairs exemption is not limited by the proviso in section 8(b)(1)(A) to simply allowing a union to deny membership for those who violate its rules. Rather, the union is free to treat its members as if it were any other sort of voluntary association. Union membership is viewed in the nature of a contractual obligation, and thus the union may seek court enforcement of fines levied pursuant to its constitution and bylaws. The consensual basis of union membership makes its disciplining of members not coercive within the meaning of section 8(b)(1)(A).[1] *Scofield v. NLRB,* 394 U.S. 423, 428–30, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969); *NLRB v. Allis-Chalmers Manufacturing Co.,* 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967); *see NLRB v. Boeing Co.,* 412 U.S. 67, 71–76, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973).

However, the internal affairs exemption from section 8(b)(1)(A) does not apply when a union's application of its rules is contrary to national labor policy. In such a case the disciplinary action is regarded as coercive within the meaning of section 8(b)(1)(A), even if limited to denying membership to the offender. *NLRB v. Marine Workers Union,* 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).[2]

In short, the Supreme Court's decisions protect union disciplinary actions which qualify as "internal" both in a procedural and substantive sense. Procedurally, the means of enforcement must not exceed the contractual authority of a voluntary association over its members. Substantively, the rule being enforced must reflect a legitimate union interest and must not impair national labor policy. The *Scofield* Court summarized the test as follows:

Under this dual approach, § 8(b)(1) leaves a union free to enforce a properly adopted rule which reflects a legitimate union interest, impairs no policy Congress has imbedded in the labor laws, and is reasonably enforced against union members who are free to leave the union and escape the rule.

394 U.S. at 430, 89 S.Ct. at 1158.[3]

## II.

In the instant case, Clerks Local 1179 enforced its bylaw by procedures to which its members must be held to have consented when they joined the union. In *Allis-Chalmers,* the Supreme Court held that a union could discipline members, pursuant to its constitution and bylaws, by levying fines and seeking to enforce them in the courts. And we think that the further enforcement procedure employed by Local 1179—refusing to transfer membership to anoth-

---

1. For this reason the Court has limited the power of unions over resigned members. *Booster Lodge 405, Machinists v. NLRB,* 412 U.S. 84, 93 S.Ct. 1961, 36 L.Ed.2d 764 (1973). *See* Note, *Union Power to Discipline Members Who Resign,* 86 Harv.L.Rev. 1536 (1973). Similarly, the enforcement of internal rules by violent means would go beyond the consensual basis for union discipline and hence violate section 8(b)(1)(A). *See, e. g., NLRB v. Boeing Co.,* 412 U.S. 67, 78 n.15, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973).

2. Even if a rule concerns properly internal affairs, section 8(b)(2) of the Act prohibits the union from enforcing it by interfering with the member's relationship with his employer, except for nonpayment of dues under a valid union security agreement. 29 U.S.C. § 158(b)(2). In addition, section 101(a)(5) requires certain procedural safeguards for the imposition of union discipline. 29 U.S.C. § 411(a)(5). In the instant case there was no allegation that the union violated either of these sections of the Act.

3. In *NLRB v. Boeing Co.,* 412 U.S. 67, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973), the Court upheld the Labor Board's refusal to review union fines to determine whether their amounts were reasonable. The Court stated that any contrary implication in the *Scofield* test was dictum. *Id.* at 72, 93 S.Ct. at 1955–1956. Thus the question of reasonableness is one for state courts to determine, under the law of contracts and voluntary associations, if the union seeks judicial enforcement of the fines. *Id.* at 74, 93 S.Ct. 1957. On the other hand, the Labor Board continues to be responsible for determining whether a rule impairs national labor policy so that it is no longer substantively an internal matter. *See id.* at 78, 93 S.Ct. 1958.

er local union—can also be regarded as internal procedure.

On the other hand, the purpose of the union's actions was to discipline Pereira and other members for failing to observe picketing by another union, picketing subsequently determined to have violated section 8(b)(7) of the Act. The question thus presented is whether or not such a purpose falls substantively within the internal affairs exemption of section 8(b)(1)(A). This question requires us to evaluate the union's disciplinary action by determining, first, whether it furthers a legitimate union interest, and, second, whether it impairs national labor policy.

In *Allis-Chalmers,* the Supreme Court held that a union has a "particularly vital" interest in disciplining members who failed to support its own valid economic strike. 388 U.S. at 181, 87 S.Ct. 2001. In addition, this court has held that a union may discipline members for failing to honor a sister union's lawful economic strike. *Morton Salt Co. v. NLRB,* 472 F.2d 416, 421–22 (9th Cir. 1972), *vacated on other grounds,* 414 U.S. 807, 94 S.Ct. 37, 38 L.Ed.2d 43 (1973), *on remand sub nom. O'Reilly v. NLRB,* 510 F.2d 428 (9th Cir. 1975). A sympathy strike serves the legitimate union interest of promoting mutual aid and cooperation with other unions, which is recognized in section 7 of the Act.

Even though the Teamster picketing was determined to be unlawful as a violation of section 8(b)(7), the Board does not contend that Clerks Local 1179 was trying to force its own members to participate in activity which would violate the Labor Act. Section 8(b)(7) proscribes only certain organizational and representational picketing and does not seem to extend to strikes in support thereof. *See Claremont Polychemical Corp.,* 196 N.L.R.B. 613, 614–15, 629 & n.38 (1972).[4] Moreover, at the time Local 1179 engaged in its sympathy

strike, the Teamsters' picketing had not yet been declared unlawful. In addition, the no-strike clause in the Retail Clerks' collective bargaining agreement with Alpha Beta specifically allows employees to refuse to cross picket lines sanctioned by the Central Labor Council. Under these circumstances, we conclude that at the time of calling the sympathy strike, Local 1179 had an apparently legitimate interest in seeking to force its members to observe the Teamsters' picket lines.

The second question we address is whether the discipline imposed on Pereira and the others impairs national labor policy. The Supreme Court has held that such impairment occurs when a union seeks to enforce a rule requiring exhaustion of internal appeals before a member can lodge a complaint with the NLRB. *NLRB v. Marine Workers Union, supra.* In addition, the Board and other circuits have invalidated union discipline as an impairment of national labor policy when taken to compel members to strike in violation of the Labor Act or of their collective bargaining agreement. *See, e. g., Verville v. International Association of Machinists,* 520 F.2d 615 (6th Cir. 1975) (sympathy strike in violation of no-strike clause in collective bargaining agreement); *Local 1104, Communications Workers v. NLRB,* 520 F.2d 411 (2d Cir. 1975) (illegal secondary boycott); *National Grinding Wheel Co.,* 176 N.L.R.B. 628 (1969) (strike in violation of collective bargaining agreement).

We conclude that the discipline in the instant case to some extent impairs national labor policy. Though not declared illegal itself, the purpose of the strike was to lend support to picketing which was found to violate section 8(b)(7) of the Act. Even if the decision to call a sympathy strike was originally taken in good faith, Clerks Local 1179 continued its efforts to discipline the strikebreakers after the NLRB issued a complaint and obtained an injunction

4. Section 13 protects the right to strike unless specifically restricted in another section of the Act. For example, section 8(b)(4) prohibits all forms of coercion, including strikes, with certain secondary objectives. By contrast, section 8(b)(7) only prohibits conduct which can be characterized as picketing.

against the Teamsters, and after the Board determined that the picketing had violated the Act. Under these circumstances, we conclude that the union's continuing efforts to discipline those members who failed to observe the picket lines tends to impair the policy against such picketing expressed in section 8(b)(7) of the Act.

Where union discipline impairs national labor policy, it is no longer exempt from section 8(b)(1)(A) as an internal matter, even when it also serves an apparently legitimate union interest. For example, a union's interest in resolving grievances internally is legitimate and recognized in section 101(a)(4) of the Act, but the Court in *Marine Workers* held that rules to promote this interest impermissibly impaired national labor policy. 391 U.S. at 425–26, 88 S.Ct. 1717. Although this is a closer case, we conclude that the existence of a legitimate motive at the time of the sympathy strike does not outweigh the impairment of national labor policy which results from the union's continued attempts to discipline its members after the Teamsters' picketing was determined to be unlawful. Accordingly, the order of the Board is enforced.