**Billy N. CHADWICK, Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 175, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Appellees.**

No. 81–1699.

United States Court of Appeals, District of Columbia Circuit.

Submitted Without Oral Argument.

Decided April 9, 1982.

---

Billy N. Chadwick, Washington, D. C., was on the brief for appellant, pro se.

Laurence J. Cohen and Robert Matisoff, Washington, D. C., were on the brief for appellees.

Before BAZELON, Senior Circuit Judge, and MIKVA and EDWARDS, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

In October 1980, Billy N. Chadwick filed suit in the district court alleging that the International Brotherhood of Electrical Workers (IBEW) had violated section 101(a)(2) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(2), by expelling Chadwick from the union. On May 21, 1981, the district court granted defendant's motion to dismiss for lack of subject matter jurisdiction, finding that Chadwick had failed to use the procedures available under the IBEW Constitution to appeal the expulsion order and thus had not exhausted his internal remedies.

We reverse. The LMRDA grants authority to the courts to require exhaustion of reasonable union procedures before initiation of a legal action, but this determination is discretionary. The district court erred in finding that Chadwick's alleged failure to exhaust his internal union remedies constituted a jurisdictional bar to his legal action, and in granting the union's motion to dismiss on that ground.

## I. BACKGROUND

Chadwick has been a member of IBEW Local 760 since 1967, but in 1978 he obtained employment on a power plant project in the jurisdiction of IBEW Local 175. The second local required each electrician to pay "working dues," a percentage of gross wages, in addition to uniform monthly dues. Chadwick refused to pay the working dues, and also prepared and distributed an open letter to Local 175's members calling these dues an illegal "kickback" and urging his co-workers not to pay them.

Chadwick's actions led to two separate disciplinary proceedings before Local 175's Trial Board. In February 1979, he was charged with violating the bylaws requiring members to pay their dues. In April 1979, he was charged with violating a provision of the IBEW Constitution by "publishing or circulating among the membership false reports or misrepresentations" about the local. When Chadwick was found guilty of the first charge, he was fined $200 in addition to the debt of $59.35 for unpaid dues. When Chadwick was found guilty of the second charge, Local 175 ordered that he be expelled from the IBEW.

The conjunction of the two sanctions complicated Chadwick's attempts to appeal these decisions. Article XXVII, § 13 of the IBEW Constitution provided: "No appeal for revocation of an assessment shall be recognized unless the member has first paid the assessment, which he can do under protest." But no interpretation of this provision had yet been rendered by an IBEW official with authority to construe language of the union constitution, and Chadwick contended that it did not apply in his case.[1]

---

1. As Chadwick argued to the IBEW President: Article 23, Section 3 pertains to a member's possible indebtedness to *his own* local union, or to *the* IBEW. No provision is made therein for the suspension of a member's rights or standing because of debts allegedly owed to another, or "foreign" local . . . .

He therefore appealed both decisions without paying any part of the assessment.

The first level in the union's appeal process was the IBEW Vice President, who informed Chadwick that neither appeal could be considered as long as Chadwick was in arrears. This did not resolve Chadwick's obligations under Article XXIII, however, because the vice president like the trial board could not render an official interpretation of the IBEW Constitution. Chadwick therefore continued his appeals to the IBEW President—who did have such authority under Article IV, § 3.2.

The IBEW President also refused to consider Chadwick's appeal, however. Chadwick, viewing this as a dispositive ruling on his obligations at last, sent a Western Union money order in the amount of $259.35 to Local 175 on December 6, 1979. Six days later, he appealed to the last level of appeal, the IBEW International Executive Committee (IEC). The IEC, however, viewed the President's decision as a ruling on the merits. It affirmed that decision in March 1980, stating that "Chadwick's belated tender of the assessment and working dues to Local 175 ... cannot serve retroactively to reinstate his right to appeal." In October 1980, Chadwick filed a suit in the district court alleging that the IBEW had violated his LMRDA § 101(a)(2) right to free speech by expelling him from membership.

Chadwick's complaint stated that he had exhausted his internal union remedies. The IBEW filed a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, arguing that Chadwick had in fact failed to exhaust those internal remedies. The union relied specifically on the proviso to LMRDA § 101(a)(4), 29 U.S.C. § 411(a)(4), which states that no labor organization shall limit the right of its members to bring a court action

> Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof.

The district court granted the motion, although it ordered that dismissal be without prejudice. "Because plaintiff Chadwick has failed to exhaust his internal remedies ... the court is *compelled* to dismiss this matter." Order, May 21, 1981, at 1 (emphasis added).[2]

## II. DISCUSSION

Chadwick contends that he did comply with the union's appeal procedures, and that at the very least the question whether he had exhausted his internal remedies presented a genuine issue of material fact that should not have been decided on a Rule 12(b)(1) motion to dismiss. The union responds that courts are free to make factual inquiries in determining questions of jurisdiction, and that the district court correctly found that Chadwick had failed to exhaust his internal union remedies. We emphatically decline to enter this thicket, however, because these questions are irrelevant.[3] The district court's jurisdiction was absolutely unaffected by Chadwick's alleged failure to exhaust his internal remedies because the proviso to § 101(a)(4) is permissive rather than mandatory.

In *NLRB v. Industrial Union of Marine and Shipbuilding Workers*, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968), the Su-

---

Brief for Appellant Chadwick at 8–9 (quoting letter of August 8, 1979).

2. The district court added that dismissal was without prejudice, and ordered that Chadwick should now be allowed to tender the money owed if he so chooses because his protest did present the International President with the task of interpreting Article XXIII, Sections 3 and 5 for the first time.
Order at 8. In a related case between the same parties that are involved here, however, the

District Court for the Eastern District of Tennessee declined to give any weight to this order: "[I]t is sufficient to note that the order is a nullity, as a court without jurisdiction cannot order affirmative relief." *Chadwick v. Pillard*, No. 1–81–301, slip op. at 4 (E.D.Tenn. January 18, 1982).

3. *But see generally Gordon v. National Youth Work Alliance*, 675 F.2d 356 (D.C.Cir. 1982).

preme Court ordered enforcement of an NLRB remedial order in favor of a union member who had been expelled for filing charges against the union before exhausting his internal remedies. The Court said:

> We conclude that "may be required" is not a grant of authority to unions more firmly to police their members but a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union.

*Id.* 391 U.S. at 426, 88 S.Ct. at 1723. In other words, the proviso does not establish a jurisdictional bar to judicial review that may be invoked by union defendants, but simply preserves the discretionary exhaustion doctrine that allowed courts to determine whether pursuit of internal remedies should be required in a given case even before the LMRDA was enacted. *Id.* at 427–28, 88 S.Ct. at 1723 (reviewing legislative history of the proviso); *see Chambers v. Local Union 639*, 578 F.2d 375, 385 (D.C. Cir.1978); *Fulton Lodge No. 2, IAM v. Nix*, 415 F.2d 212, 216 (5th Cir. 1969), *cert. denied*, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). The district court erred in granting the motion to dismiss for lack of subject matter jurisdiction, and Chadwick's action should be reinstated.

There remains one final procedural complication. In June 1981, following the dismissal of his action in the District of Columbia, Chadwick filed a related action in the United States District Court for the Eastern District of Tennessee. On January 18, 1982, the Tennessee district court denied a motion to dismiss that action on jurisdictional grounds, and granted cross-motions of the parties to continue the pretrial and trial of the lawsuit. *Chadwick v. Pillard*, No. 1–81–301 (E.D.Tenn. January 18, 1982). Prosecution of the action in the District of Columbia may thus be unnecessary; indeed, Chadwick has moved that this cause be transferred to the Eastern District of Tennessee for consolidation with the suit now in progress there. Accordingly, we reverse the district court's order with instructions that the district court consider whether the action should be transferred in the interests of justice, pursuant to 28 U.S.C. § 1404.

*It is so ordered.*