**DOUGHERTY COUNTY SCHOOL SYSTEM, Plaintiff-Appellee,**

v.

**T.H. BELL, Secretary of Education, Defendant-Appellant.**

**No. 78-3384.**

United States Court of Appeals, Fifth Circuit.[*]

Dec. 20, 1982.

---

* Former Fifth circuit case, Section 9(1) of Public Law 96-452—October 14, 1980.

Denver L. Rampey, Jr., U.S. Atty., Macon, Ga., Drew S. Days, III, Asst. Atty. Gen., Dept. of Justice, Brian K. Landsberg, Marie E. Klimesz, Washington, D.C., for defendant-appellant.

C. Richard Langley, Albany, Ga., Jesse W. Walters, for plaintiff-appellee.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before RUBIN and POLITZ, Circuit Judges, and DYER, Senior Circuit Judge.

ALVIN B. RUBIN, Circuit Judge:

By an order filed on May 24, 1982, the Supreme Court of the United States vacated the judgment of this court, *Dougherty County School System v. Harris,* 622 F.2d 735 (5th Cir.1980), and remanded the case to us for further consideration in the light of its decision in *North Haven Board of Education v. Bell,* 456 U.S. ——, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). *Bell v. Dougherty County School System,* 456 U.S. ——, 102 S.Ct. 2264, 73 L.Ed.2d 1280 (1982). The sole issue raised by the prior appeal was the correctness of the district court's summary judgment declaring invalid the regulations promulgated in 45 C.F.R. §§ 86.51 & 86.54. We affirmed the district court's judgment, stating that "the regulations as written" were invalid, 622 F.2d at 737, because "the Secretary exceeded his authority by enacting general regulations prohibiting sex discrimination in employment without limiting their effect to specific programs that receive federal financial assistance." *Id.* at 738. We said, however, in dictum that the statute was intended to proscribe employment discrimination related to specific programs receiving federal aid. Thereafter, the Second Circuit, in *North Haven Board of Education v. Hufstedler,* 629 F.2d 773 (1980), held that these same regulations were authorized by Title IX, 20 U.S.C. § 1682. The Supreme Court affirmed the Second Circuit's decision in *North Haven,* holding that the language of the statute and its legislative history support the "conclusion that employment discrimination comes within the prohibition of Title IX." *North Haven Bd. of Educ. v. Bell,* 456 U.S. at ——, 102 S.Ct. at 1922–23, 72 L.Ed.2d at 314 (footnote omitted). While agreeing

with our statement that the statute is "program-specific," the Supreme Court held, contrary to our conclusion, that "Subpart E is consistent with the Act's program-specificity." *Id.* at ——, 102 S.Ct. at 1927, 72 L.Ed.2d at 319.

■■■ The Department of Education now takes the position that, because administrative proceedings had not been completed when it suspended federal aid to the Dougherty County School System, we should vacate the district court's decision and remand this case with instructions to grant summary judgment in its favor. Failure to exhaust administrative procedures is not a jurisdictional defect, which the court would be obliged to note *sua sponte,* but an affirmative defense akin to prematurity. *NLRB v. Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO, Local 22,* 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 1723 n. 8, 20 L.Ed.2d 706, 713 n. 8 (1968); *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1034 (5th Cir.1982); *Ecology Center of Louisiana v. Coleman,* 515 F.2d 860, 865–67 (5th Cir.1975). A reviewing court need not require exhaustion of administrative remedies if the agency fails to assert lack of exhaustion as a ground for denying review. *Compare Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522, 538 (1979); *Mathews v. Diaz,* 426 U.S. 67, 76, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478, 487–88 (1976). *See also* K. Davis, Administrative Law

Treatise § 20.13 (1982 Supp.). A fortiori, the issue may not be raised for the first time on appeal. The defense that the administrative procedure had not been exhausted was never raised in the district court and was not raised in this court until after the remand from the Supreme Court.[1] The department's position, therefore, cannot be sustained.

Indeed, the *North Haven* decision implicitly recognizes federal court jurisdiction to determine whether termination of federal funds is permissible. The Court directed that "[w]hether termination of . . . federal funds is permissible under Title IX is a question that must be answered by the district court in the first instance." 456 U.S. at ——, 102 S.Ct. at 1927, 72 L.Ed.2d at 319.

As with the cases considered by the Supreme Court in *North Haven,* the procedural posture of this case makes further district court proceedings necessary. In *North Haven,* as here, appeals were taken from grants of summary judgment. The records available to the Court did not provide evidence of discriminatory practices prohibited by Title IX. Nor had the school systems addressed the department's regulatory authority under the Court's reading of the statute. At that stage of the cases' development, the Court declined to examine the merits of the controversies before it, and remanded for consideration by the district

---

1. The record shows that, although the school system argued the administrative exhaustion issue in expectation of a government challenge on that ground, Brief in Support of Plaintiff's Motion for a Temporary Restraining Order, filed June 19, 1978, at 4, the government only once alluded to exhaustion:

> There may also be a question as to whether this Court has subject matter jurisdiction over this action. HEW has established, in accordance with Title IX, an administrative mechanism which provides elaborate procedural safeguards before Federal assistance can be terminated. Plaintiff has attempted to by-pass this procedure even before plaintiff has suffered any injury.

Memorandum of Points and Authorities in Support of Defendant's Opposition to Motion for Preliminary Injunction, filed June 19, 1978, footnote at 3.

This tentative suggestion that the district court might not have jurisdiction over the action because of lack of exhaustion was never incorporated into the pleadings. Moreover, while the administrative proceedings may safeguard against erroneous *termination* of federal funding, they offer no protection against erroneous *deferral* of funding. The failure of administrative proceedings to offer an adequate remedy justifies resort to the federal courts before administrative proceedings are exhausted. *Lewis v. Reagan,* 660 F.2d 124, 127 (5th Cir.1981) (per curiam); *Curtis v. Taylor,* 648 F.2d 946, 949 (5th Cir.1980); *Camenisch v. University of Texas,* 616 F.2d 127, 134 (5th Cir.1980), *vacated on other grounds,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Rhodes v. United States,* 574 F.2d 1179, 1181 (5th Cir.1978).

court. *Id.* The undeveloped record in this case compels us to follow the Supreme Court's example.

■ Further district court proceedings are necessary because the department's order deferring federal funds to the Dougherty County School System makes no distinction among the programs to which the funds are applied. When this action was filed, the school system received almost $5,000,000 in federal funds.[2] Although the sole discriminatory practice alleged by the department in administrative proceedings is a disparity between salary supplements paid to industrial arts and home economics teachers,[3] the department has deferred funding of all new programs and significant increases in the funding of continuing programs. Insofar as the department's order defers funding of programs that do not discriminate on the basis of sex, the department's action is ultra vires. The school system may pursue relief from that portion of the order in the district court.

In a reply brief addressing what action this court should take post-remand, the department suggests for the first time that, "should this Court . . . vacat[e] the district court's decision so that the administrative process could proceed, the Department will not exercise its authority to defer Federal financial assistance to the Dougherty County School System." We decline to dispose of the case in that manner for several reasons.

First, the correctness of the department's application of its regulations to the Dougherty County School System, in the light of the Supreme Court's interpretation of the regulations, is a new issue in this case. Prior to the *North Haven* decision, the school system opposed the regulations on the ground that the department had no authority under Title IX to regulate employment discrimination. The issue of whether the department's actions exceed the "program-specific" nature of its regulatory authority under Title IX has not yet been addressed by the parties or by the district court.

Second, we doubt the propriety of the department's suggestion that we dismiss this case on the basis of a negotiated arrangement between the department and the courts. To support its offer, the department submits to us a "declaration" from the Assistant Secretary for Civil Rights in the Department of Education. The declaration promises that, "following . . . remand to the district court with instructions to grant summary judgment in favor of the defend-

---

2. During the school year 1977–1978 the Dougherty County School System received federal funds either through direct payment or through the Georgia State Department of Education in the total sum of $4,823,551.00. These payments were earmarked as follows:
   (a) Title I Academic Programs for disadvantaged students—$1,500,000.
   (b) Title IV parts A and B—Money for purchase of books and equipment—$60,000.
   (c) Title IV Part C—Programs in Staff development—$15,000.
   (d) Funds in lieu of taxes for federally connected students—$500,000.
   (e) Secondary vocational funds for programs through the 12th grade—$70,645.
   (f) Post-Secondary vocational funds—$216,456.
   (g) Comprehensive Employment Training Act (CETA)—Employee Wages such as Teachers-Aides and maintenance personnel—$735,000.
   (h) Education of the Handicapped—$36,450.
   (i) Emergency School Assistance Act (ESAA) —Supports efforts for implementation of public schools, desegregation—$110,000.
   (j) School lunches for disadvantaged students —$1;500,000.
   (k) Commodity Foods—$80,000.
   All of the above funds are for on-going programs with the exception of Title IV Part C funds and ESAA funds. These two programs are considered new programs during each school year.

3. During the calendar year 1977–1978 Dougherty employed thirteen home economics teachers at the junior high school level. The salaries for these teachers ranged from a low of $10,739.10 to a high of $14,741.40 with the total salary paid to all junior high school home economics teachers being in the sum of $160,037.30. During the same time Dougherty employed eight industrial arts teachers with salaries ranging from a low of $11,660.32 to a high of $17,643.20. The total salary for all junior high school industrial arts teachers was in the sum of $114,335.14. The total budget for Dougherty during the school year 1977–1978 was in excess of $29,000,000.

ants, no Federal financial assistance ... will be deferred upon recommencement of administrative proceedings based on the finding of a violation of Title IX...." Such a bargain for court dismissal of injunctive suits brought by parties seeking relief from agency actions might be struck between the parties, but we cannot countenance a court becoming party to such a proposal. Even were the dismissal bargain proffered to the school board, it might question whether the declaration binds the federal government, for the record does not establish the degree of authority of the Assistant Secretary over the department's deferral of funds or whether his promise will outlast his own tenure.

Third, we doubt the department's authority to defer federal funds while it conducts proceedings to determine whether a school system is in compliance with Title IX. Deferral of funds pending conclusion of administrative proceedings is statutorily authorized for investigations of compliance with Title VI. 42 U.S.C.A. § 2000d–5 (1981). The agency regulations implementing this statutory provision have been adopted as interim procedures for enforcement of Title IX. There is no corresponding statutory authorization, however, for deferral of funds pending administrative investigation of compliance with Title IX. Indeed, the department seems to have realized this: the record shows that the department did not rely on any statutory or regulatory provision as authority for deferring funding of Dougherty County school programs. This court's prior opinion disposed of this case on the more fundamental issue whether the department's regulations exceeded its authority. The *North Haven* decision that the regulations are not *ultra vires,* raises the subsidiary question whether they have been correctly applied in this case. This issue, arising for the first time on appeal, can more appropriately be considered by the district court. In its further proceedings, the statutory authority of the department as well as all of the other issues belatedly raised on appeal can be fully explored.

For these reasons, the action is REMANDED to the district court for further proceedings consistent with the opinion of the Supreme Court of the United States.