**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION LOCAL 13, Respondent.**

No. 77–2313.

United States Court of Appeals, Ninth Circuit.

July 21, 1978.

Rehearing and Rehearing En Banc Denied Sept. 19, 1978.

William F. Wachter, Washington, D. C. (argued), for petitioner.

Martha Goldin (argued), Hollywood, Cal., for respondent.

Before SNEED and KENNEDY, Circuit Judges, and CALLISTER,* District Judge.

SNEED, Circuit Judge:

The underlying question presented by this appeal is whether a refusal by a union to permit a member to work for the employer for a ten-day period, as a sanction imposed by the union on the member for his failure to pay when due certain fines and assessments, constitutes an unfair labor practice prohibited by sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A) and (2). We hold that it does and, consequently, grant

---

* Hon. Marion J. Callister, United States District Judge for the District of Idaho, sitting by designation.

enforcement of the National Labor Relations Board's order.

The facts, in a somewhat condensed form, as found by the Board are these. The International Longshoremen's and Warehousemen's Union Local 13 (Union) and the Pacific Maritime Association (PMA), the collective bargaining representative of various employers engaged in longshore and stevedoring operations, are parties to a collective bargaining agreement which, although it does not contain a provision requiring employees to be members of the Union as a condition of employment, does require that employees of PMA employers be dispatched through a hall administered jointly by the Union and the PMA. The agreement further provides that there be no discrimination between members of the Union and nonmembers in dispatching, so long as nonmembers pay the "pro rata share of the expenses related to the dispatching hall, the Labor Relations Committee, etc." The Union's constitution, by-laws and general rules fix the date that membership dues are due and payable and also provide that all "fines, assessments or other indebtedness must be paid before your dues will be accepted."

Larry Sullivan, a member of the Union since 1953, offered to pay within the time allowed his dues but not certain fines and assessments which he owed. The dues, unaccompanied by payment of the fines and assessments, were refused by the Union. Thereafter, Sullivan became delinquent with respect to his dues. On Sunday, January 18, 1976, two days after he became delinquent, Sullivan was sent from the dispatch hall to a job and was there at the jobsite approached by the Union's Business Representative who requested that Sullivan call a replacement for himself and leave the job. Sullivan refused. On the next day, Sullivan paid his dues together with the fines and assessments.

On the same day, Monday, January 19, 1976 the Business Representative filed an "internal complaint" against Sullivan and on March 2, 1976 a grievance committee was convened. After a hearing the committee imposed a penalty against Sullivan consisting of barring his use of the dispatch hall for 30 days, of which 20 were suspended. Sullivan appealed to the labor relations committee which denied his appeal. The Union Executive Board reviewed the matter and advised Sullivan that he could avoid the penalty by dropping his membership in the Union and converting to the "pro rata status." He was advised that this would relieve him of any control by reason of membership by the Union. Sullivan rejected the suggestion and the Executive Board denied his appeal. Thereafter, his appeal was submitted to a meeting of the full membership where again it was denied. On April 2, 1976 the penalty was imposed and for a period of ten days Sullivan was denied use of the dispatch hall.

During the pendency of the Sullivan appeals the Union, in a notice to the membership and after reciting the provisions of the constitution, by-laws and general rules applicable to dues, fines and assessments, stated that, "This means that the officers have instructed the girls in the dues office that if payments are not made on Caucus and Convention assessments and fines, dues will not be accepted and you WILL NOT BE ALLOWED TO WORK." (Emphasis in original).

The Board found that the Union had violated the Act in three respects. It violated section 8(b)(1)(A) and (2) by threatening to refuse and by refusing to dispatch Sullivan for a ten-day period because he failed to comply with a rule concerning the payment of fines, and assessments. Second, the Union violated section 8(b)(1)(A) by threatening to institute, and by instituting disciplinary action against Sullivan for his failure to leave the jobsite on Sunday, January 18, 1976. Finally, the threats to prevent other members from working if they do not properly pay fines and assessments violated section 8(b)(1)(A). The Board's order, which we will not recite in detail, was properly fashioned to respond to these violations, providing the Board correctly interpreted the Act.

As we have indicated, we believe it did. The Supreme Court in *NLRB v. Boeing Co.,* 412 U.S. 67, 73–74, 93 S.Ct. 1952, 1956, 36 L.Ed.2d 752 (1973) observed:

> "In *Scofield* [*Scofield v. NLRB*, 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969)] we decided that Congress intended to distinguish between the external and the internal enforcement of union rules, and that therefore the Board would have authority to pass on those rules affecting an individual's employment status but not on his union membership status."

*Scofield*, at 394 U.S. 428, 89 S.Ct. 1157, quoted *NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 195, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967) to the effect that section 8(b)(1)(A) was intended by Congress to permit a union to enforce its internal regulations as it saw fit "aside from barring enforcement of a union's internal regulations to affect a member's employment status." This court has recognized this limit on union power. *See, NLRB v. Retail Clerks Union, Local 1179*, 526 F.2d 142, 145, n.2 (9th Cir. 1975).

The issue thus becomes whether the Board was correct in finding that the Union's actions here questioned were an attempt to enforce the union's internal regulations by "affecting an individual's employment status" rather than his union membership status. We hold that the Board was correct. The enforcement was to deprive Sullivan of work. Nothing more profoundly *affects* "an individual's employment status."

The Union attempts to refute this proposition by pointing out that Sullivan could have avoided the loss of work by surrendering his membership in the Union. So he could have; but the Board's characterization of the Union's action remains valid. To present a union member with the Hobson's choice between surrender of his membership or temporary loss of employment cannot be characterized fairly as action not "affecting an individual's employment status." It is sophistry to insist otherwise.

Finally, the Union argues that Sullivan at the general membership meeting waived his right to initiate proceedings before the Board. The Administrative Law Judge and the Board found otherwise and substantial evidence in the record as a whole supports this finding.

ENFORCE THE ORDER.