769 F.2d 574
 120 L.R.R.M. (BNA) 2227, 103 Lab.Cas. P 11,624
 CARPENTERS UNION LOCAL NO. 25, United Brotherhood of
Carpenters & Joiners of America, AFL-CIO, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LOS ANGELES COUNTY DISTRICT COUNCIL OF CARPENTERS, United
Brotherhood of Carpenters and Joiners of America, AFL-CIO &
Carpenters Union Local No. 2435, United Brotherhood of
Carpenters & Joiners of America, AFL-CIO, Respondents.
 Nos. 84-7398, 84-7484.
 United States Court of Appeals,
Ninth Circuit.
 84-7398 Argued and Submitted April 2, 1985.
84-7484 Submitted April 2, 1985*.
Decided Aug. 20, 1985.
 
 Paul M. Posner, Marina del Rey, Cal., for petitioners.
 Larry Blatnik, Washington, D.C., for respondent.
 On Petition for Review and Application and Cross-Application for Enforcement of Orders of the National Labor Relations Board.
 Before GOODWIN, SNEED, and SKOPIL, Circuit Judges.
 SKOPIL, Circuit Judge:
 
 
 1
 The Carpenters Union Local No. 25, United Brotherhood of Carpenters & Joiners of America, AFL-CIO ("Local 25") seeks review of the National Labor Relations Board's ("Board") decision, 270 NLRB No. 110 (1984), that Local 25 committed unfair labor practices by unlawfully threatening members with diminished employment and by violating hiring hall rules. The Board cross-applies for enforcement against Local 25. The Board also seeks to enforce an order against the Los Angeles County District Council of Carpenters, United Brotherhood of Carpenters & Joiners of America, AFL-CIO ("District Council") and the Carpenters Union Local No. 2435, United Brotherhood of Carpenters and Joiners of America, AFL-CIO ("Local 2435"). Both were found by the Board to have committed unfair labor practices by refusing to refer individuals for work who did not have valid work cards. We enforce the Board's orders.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 Locals 25 and 2435 are carpenter unions and members of the District Council. The Administrative Law Judge ("ALJ") found and the parties agree that Local 25 has for years been embroiled in an intraunion rivalry that has produced contested elections, lawsuits, disciplinary proceedings, and allegations of impropriety. Additionally, Local 25 apparently resists communications with the District Council and does not forward members' dues to the District Council. In response, the District Council has refused to issue work cards to Local 25 members. To remedy that situation, Local 25 allegedly issued forged and reprinted work cards.
 
 
 3
 Against that backdrop, the Board charged the various parties with violations of sections 8(b)(1)(A) and (2) of the National Labor Relations Act, 29 U.S.C. Secs. 158(b)(1)(A) and (2) (1982). Specifically, Local 25 was charged with threatening dissident members with diminished work referrals and with improperly dispatching workers under the union's exclusive hiring hall procedures. The District Council was charged with improperly denying work to two employees who did not have District Council work cards. Local 2435, acting on the advice of the District Council, refused to process a Local 25 member's rehire form and was charged with committing an unfair labor practice.
 
 
 4
 In reviewing these allegations, the ALJ was presented with contradictory testimony that the ALJ described as a product of "mutual hostility and suspicion." In resolving these contradictions in the evidence, the ALJ made a number of credibility determinations based principally on the "relative demeanor of the contending witnesses." In so doing, the ALJ found for the unions on some of the charges but against the unions where they failed to justify their actions. We summarize the facts underlying each violation.
 
 
 5
 1. Threatening Statements.
 
 
 6
 Four union members testified that Scott, a Local 25 officer and hiring hall dispatcher, on various dates indicated to them that he "protected," "took care of," or "got jobs for his boys" and otherwise obtained benefits for those who aligned themselves politically with him. Uncontradicted evidence disclosed that the four members politically opposed Scott, and there had been a history of dispute and disagreement between the factions. The ALJ found that Scott held the four and their political allies "in contempt, had done so for a long period, and regarded them as his implacable opponents in matters regarding the Local."
 
 
 7
 The ALJ credited the testimony of the four members and generally discredited Scott's contrary testimony. He found that Scott regularly suggested that friends and allies would benefit by regular job referrals and that enemies conversely would suffer. The ALJ rejected, however, the members' allegations that Scott had threatened to kick them out of the union or refused to accept their union dues.
 
 
 8
 2. Hiring Hall Irregularities.
 
 
 9
 Local 25, by the actions of its representative Scott, was found to have violated sections 8(b)(1)(A) and (2) by improperly referring employees through its hiring hall. Under hiring hall regulations, the union must maintain an open and non-discriminatory employment list of carpenters seeking work. The union must dispatch carpenters at the request of employers from the top of that list except that a contractor may name individual carpenters to fill up to 25% of its request. Employers may also request former employees without regard to the 25% limitation. Local 25 was charged with violating these rules by allowing or acquiescing in named requests and clearances for individuals not entitled to referral. The ALJ found that Local 25 committed unfair labor practices for its actions in the following incidents:
 
 
 10
 a. The Fonsecas to Homecraft referrals
 
 
 11
 Homecraft contacted Local 25 and sought referral of two carpenters. No particular carpenters were specified. Scott referred David and Joseph Fonseca, father and son, to Homecraft. At the time, the Fonsecas were not on the out-of-work list and had not been previously employed by Homecraft. There was no employer request under the 25% clause made prior to the referral.
 
 
 12
 b. Vidmore to Ceco
 
 
 13
 Ceco requested Local 25 to clear Vidmore, a non-union job seeker, for work. Scott allowed Vidmore to pay the union's dues and initiation fees and then referred Vidmore to Ceco where he started to work. The ALJ found that Vidmore was not known to Scott or any other Local 25 officer prior to these events.
 
 
 14
 c. Fonseca to Tile Layers
 
 
 15
 When Tile Layers' Local 18 decided to remodel their offices, they called Local 25 to inquire about carpenters for the job. Scott referred a foreman and Joseph Fonseca. Fonseca was not specifically requested and was not at the top of the out-of-work list.
 
 
 16
 d. Macias/Alarcon/Fonsecas to Casillas
 
 
 17
 Casillas had experienced difficulty in obtaining competent carpenters from Local 25. The company discharged three men who had been dispatched and requested replacements. When none appeared as scheduled, Casillas called Local 25 and spoke to Scott and thereafter requested four named carpenters. Scott signed the referrals. At the time none of the four was eligible for a name request and the 25% clause was not invoked by Casillas.
 
 
 18
 3. Work Card Referrals.
 
 
 19
 When Local 25 refused to remit dues to the District Council, the District Council invoked one of its bylaws and refused to issue work cards to Local 25 for distribution to members. Local 25 thereafter printed its own work cards and in one instance, a District Council card was altered. This dispute gave rise to two unfair labor practices.
 
 
 20
 a. Dale
 
 
 21
 Union rules provide that weekend and holiday work are allowed only by permit issued by the District Council. Dale, the president of Local 25, sought such permission to work on Saturday. Dale submitted his Local 25 work card to the District Council. Flores, a District Council officer, refused to issue Dale's permit. Flores testified that he called Local 25 in an attempt to verify that Dale had timely paid his union dues. Local 25 refused to take his call and Flores denied the permit based on lack of corroboration of Dale's payment of dues. This incident was repeated the following week when Dale again sought Saturday work and submitted another Local 25 work card.
 
 
 22
 b. Engen
 
 
 23
 Engen, the vice-president of Local 25, obtained from a former employer a rehire request form directed to Local 2435. Engen presented the form to Local 2435's business agent along with his work card which indicated that current dues had been paid. The card, however, was an obvious forgery of a District Council work card.
 
 
 24
 Local 2435 officers called Flores for assistance. Flores advised Local 2435 to not honor the card and to send the cardholder to the District Council office. Engen's rehire referral was denied and he was told to go to the District Council to "clear up" the matter. Engen did not report to the District Council and was not rehired by his former employer.
 
 
 25
 The ALJ's findings on all of the unfair labor practices were adopted by the Board.
 
 DISCUSSION
 
 26
 A. Standard of Review.
 
 
 27
 We will enforce the Board's order if the Board correctly applied the law and if its findings are supported by substantial evidence in the record viewed as a whole. NLRB v. Nevis Industries, 647 F.2d 905, 908 (9th Cir.1981). The Board's interpretation and application of the Act is entitled to considerable deference. Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979).
 
 
 28
 We give "special weight" to the ALJ's credibility determinations when conflicting evidence is presented. NLRB v. Pacific Erectors, Inc., 718 F.2d 1459, 1462 (9th Cir.1983). The Board's findings on issues of credibility are not to be disturbed unless a clear preponderance of all the evidence convinces us that the findings are incorrect. NLRB v. Max Factor and Co., 640 F.2d 197, 204 (9th Cir.1980), cert. denied, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 840 (1981).
 
 
 29
 B. Merits.
 
 1. Threatening Statements
 
 30
 Section 8(b)(1)(A) makes it an unfair labor practice for a union to coerce or restrain employees who seek to exercise protected rights. Local 25 does not dispute that Scott's statements, if made, would violate the Act. Rather, the union argues that the ALJ and the Board improperly discredited Scott's denial. Local 25 contends that since the ALJ rejected much of the testimony of the charging witnesses, he should also have rejected their testimony about the alleged statements.
 
 
 31
 The ALJ was faced with resolving strongly opposed versions of events against a background of a long and bitter intraunion dispute. His resolution was based primarily on the demeanor of the charging witnesses and the credibility of Scott's testimony. He found that Scott's denials of events were "unpersuasively hostile and reactive." We will not disturb this credibility determination; the record does not show by a clear preponderance of the evidence that the ALJ's findings are incorrect.
 
 2. Hiring Hall Practices
 
 32
 Local 25 operates an exclusive hiring hall pursuant to a union security clause in the Master Labor Agreement. A union's operation of an exclusive hiring hall is not unlawful per se. Int'l Brotherhood of Teamsters, Local 357 v. NLRB, 365 U.S. 667, 673, 81 S.Ct. 835, 838, 6 L.Ed.2d 11 (1961). But the use of such a hall to restrain or coerce employees in the exercise of protected rights is prohibited. NLRB v. Wismer & Becker, Contracting Engineers, 603 F.2d 1383, 1388 (9th Cir.1979). Because section 8(b)(1)(A) protects the exercise of section 7 rights, a union violates section 8(b)(1)(A) if it coerces a member into joining the union or threatens harm for failure to join. Local 277, Int'l Brotherhood of Painters v. NLRB, 717 F.2d 805, 808 (3d Cir.1983). Further, the use of a hiring hall to discipline individuals or to encourage members to accept the authority of union officers is an unfair labor practice because such a practice breaches "the wall erected by the Act between organizational rights and job opportunities." Wismer & Becker, 603 F.2d at 1389 (quoting Lummus Co. v. NLRB, 339 F.2d 728, 734 (D.C.Cir.1964) ).
 
 
 33
 Local 25 argues that in each incident an employee was name-requested by an employer and "merely" given a "clearance" by the union. Local 25 denies that it caused or prompted the employer's request. Further, the union believes that the evidence shows that no others were precluded from employment and that no one suffered any bias or proscribed discrimination.
 
 
 34
 Local 25's contentions are not supported by the record. David and Joseph Fonseca were not initially requested by Homecraft and Joseph was not requested by the Tile Layers union. The Casillas' requests for particular carpenters came only after a meeting with Scott. In each instance carpenters were referred who were not eligible under the hiring hall rules.
 
 
 35
 Local 25's contention that no bias or discrimination was proven also is not supported by the record. The Fonsecas are long-time friends and political allies of Scott. Only in the Vidmore to Ceco referral is there an apparent lack of favoritism. Additionally, no specific intent to discriminate need be shown to support a finding of an unfair labor practice in the improper operation of a hiring hall. NLRB v. Int'l Ass'n of Bridge Workers, Local 433, 600 F.2d 770, 777 (9th Cir.1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). It is an unfair labor practice for a union to act in an unreasonable, arbitrary, or invidious manner in regard to a member's employment status. Id. "By wielding its power arbitrarily, the Union gives notice that its favor must be curried, thereby encouraging membership and unquestioned adherence to its policies." Id. (citing Laborers and Hod Carriers Local 341 v. NLRB, 564 F.2d 834, 839-40 (9th Cir.1977) ). For that reason, this court has recognized that even a single instance of discriminatory treatment will support a finding of an unfair labor practice when hiring hall rules are not followed. NLRB v. Laborers' Int'l Union Local 300, 613 F.2d 203, 208 (9th Cir.1980).
 
 
 36
 Nor is there merit to Local 25's argument that no one has been shown to have lost employment by its actions. By improperly referring carpenters to jobs, someone else lost a job opportunity. The identification of such individuals is properly being deferred to the compliance stage of these cases. See Bridge Workers, Local 433, 600 F.2d at 778-79.
 
 
 37
 Finally, Local 25 argues that there is no proof that it caused or attempted to cause any employers to discriminate against any employees as required by section 8(b)(2). We have rejected such a narrow interpretation of section 8(b)(2). See, e.g., NLRB v. Int'l Longshoremen's and Warehousemen's Union, Local 12, 378 F.2d 125, 129 (9th Cir.) (section 8(b)(2) violated by "simple expedient" of not dispatching men), cert. denied, 389 U.S. 846, 88 S.Ct. 104, 19 L.Ed.2d 113 (1967); NLRB v. Int'l Union of Operating Engineers, Local 12, 237 F.2d 670, 674 (9th Cir.1956) (implicitly rejecting dissent's argument that section 8(b)(2) requires that the employer have knowledge of union's unlawful activity), cert. denied, 353 U.S. 910, 77 S.Ct. 666, 1 L.Ed.2d 664 (1957). A union that refuses to properly dispatch workers is "clearly the cause of the Employers' refusing to hire these men." NLRB v. Int'l Longshoremen's and Warehousemen's Union, 210 F.2d 581, 584 (9th Cir.1954). Additionally, no specific intent to discriminate on the basis of union membership need be shown; the natural consequence of referral preferences is to encourage membership. Bridge Workers, Local 433, 600 F.2d at 777.
 
 3. Work Card Referrals
 
 38
 The ALJ rejected the argument that the District Council's refusal to issue work cards to Local 25 was a violation of section 8(b)(1)(A). He reasoned that the internal administration of financial transactions between sub-units of a union is wholly outside the purview of the Act unless there is a demonstrable nexus between that dispute and an individual member's employment status. Thus, the general allegation of wrongdoing was dismissed, but the separate incidents involving Dale and Engen were examined and violations were found.
 
 
 39
 The District Council sought to enforce its rule requiring Local unions to remit a per capita tax from collected dues by refusing to issue work cards to Local 25. Generally, section 8(b)(1) leaves a union free to enforce a properly adopted rule which reflects a legitimate union interest. Scofield v. NLRB, 394 U.S. 423, 430, 89 S.Ct. 1154, 1158, 22 L.Ed.2d 385 (1969). But the internal affairs exception to section 8(b)(1) does not apply when a union's application of its rules is contrary to national labor policy. NLRB v. Retail Clerks Union, Local 1179, 526 F.2d 142, 145 (9th Cir.1975). For example, a union may not be able to enforce its internal regulations in a manner which affects a member's employment status. E.g., NLRB v. Construction and Bldg. Material Teamsters, Local 291, 633 F.2d 1295, 1299 (9th Cir.1980); NLRB v. Int'l Longshoremen's and Warehousemen's Union, Local 13, 581 F.2d 1321, 1323 (9th Cir.1978), cert. denied, 440 U.S. 935, 99 S.Ct. 1279, 59 L.Ed.2d 493 (1979). A union's remedy for nonpayment of dues or fees is expulsion from membership except that under a valid union security agreement a union may cause an employer to discharge an employee who by nonpayment of dues fails to maintain union membership. See Sheet Metal Workers' Int'l Ass'n., Local 355 v. NLRB, 716 F.2d 1249, 1254 (9th Cir.1983).
 
 
 40
 a. Dale
 
 
 41
 The District Council prevented Dale from working because he failed to present a valid District Council work card. The ALJ concluded that under the union's security clause he could be prevented from working only for nonpayment of dues. The absence of a valid District Council work card was not, however, proof of nonpayment of dues. Members could satisfy their dues obligations by making payments directly to Local 25. Thus, the dispute is whether the District Council reasonably denied Dale the opportunity to work.
 
 
 42
 The ALJ found that Dale was indeed current in his dues at the time of the incidents and that Dale did everything asked of him to prove that fact. The District Council argues that it intended only to protect the integrity of the Master Labor Agreement by assuring that legitimate union members were referred for weekend work. The District Council contends that it attempted to confirm Dale's payment status but Local 25, consistent with its past practice, refused the inquiry.
 
 
 43
 The ALJ properly placed the burden on the District Council to justify its actions of preventing Dale from working. See Sheet Metal Workers' Local 355, 716 F.2d at 1254-55 (sanction of unemployment for nonpayment of dues is sufficiently harsh to invoke union's fiduciary obligation to member). Dale should have been given the opportunity to demonstrate that his dues were current. Instead, the District Council relied solely on the absence of a District Council card and its failure to confirm Dale's status with Local 25. The Board correctly held that the District Council did not act reasonably in denying Dale employment opportunities.
 
 
 44
 b. Engen
 
 
 45
 The ALJ found no dispute that Engen was entitled to be dispatched if he was current in his dues. He was in fact current at the time of the incident. Accordingly, the issue is whether the District Council and Local 2435 were justified in refusing to grant Engen a dispatch.
 
 
 46
 The facts present a much closer question than Dale's denial of employment. Engen presented an obviously forged District Council work card to Local 2435. The ALJ credited testimony that Engen was told by the Local 2435 dispatcher that Local 25 cards would not be honored. The dispatcher did not question Engen about dues payments or about Engen's card. Instead, the dispatcher called the District Council for instructions and was told simply to refer Engen to the District Council offices to "clear up" the problem with his card.
 
 
 47
 On its face such action by the District Council and Local 2435 appeared reasonably related to a determination of the validity of Engen's District Council card. But the ALJ reasoned that the suggestion to go to the District Council office instead of Local 25 demonstrates that the District Council was not concerned with Engen's dues status. At the time of the incident the District Council, while unaware of Engen's identity, knew he was from Local 25. No Local 25 member possessed a valid District Council card since the Council had refused to issue them. Only Local 25 could verify Engen's dues, but no attempt was made to contact Local 25. Similarly, Local 2435's dispatcher made no effort to ascertain whether Engen was in fact current in his dues.
 
 
 48
 The ALJ inferred from these events that the referral of Engen to the District Council was an impermissible "ascendancy of the District Council over Local 25" and that the Council's action was a "political maneuver" that violated the Act because it adversely affected an individual's employment opportunity. He concluded that Local 2435 violated the Act by refusing to dispatch Engen, not because of a doubt about the currency of his dues or misconduct in altering the work card, but because he did not possess a District Council issued work card. The ALJ's inferences are logical and are therefore entitled to deference. "If facts are open to conflicting inferences, we are not at liberty to draw an inference different from the one drawn by the Board, even though it may seem more plausible and reasonable to us." NLRB v. Millmen Local 550, 367 F.2d 953, 956 (9th Cir.1966) (quoted in Laborer's Int'l, Local 300, 613 F.2d at 210). Substantial evidence supports the Board's findings that the District Council and Local 2435 committed unfair labor practices.
 
 CONCLUSION
 
 49
 Substantial evidence exists to support the Board's findings that Local 25 violated the Act by threatening members with diminished employment and by violating hiring hall rules. The District Council committed unfair labor practices by refusing to allow employees to work. Local 2435 violated the Act by improperly refusing to refer an employee.
 
 
 50
 ENFORCED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 3(f)