LABORERS UNION LOCAL NO. 324, LABORERS INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Douglas Murray, Respondent–Intervenor.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

Douglas Murray, Intervenor,

v.

LABORERS UNION LOCAL NO. 324, LABORERS INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Respondent.

Nos. 95–70700, 95–70775.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1997.

Decided Feb. 10, 1997.

As Amended on Partial Grant of Rehearing Aug. 14, 1997.

Sandra Rae Benson, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for petitioner-respondent.

Paul Alan Levy, Washington, D.C., for respondent-intervenor.

Frederick C. Havard, National Labor Relations Board, Washington D.C., for National Labor Relations Board. NLRB No. 32-CB-3253.

Before: LAY,* GOODWIN, and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

A divided National Labor Relations Board ("NLRB") held in this case that a union violated Section 8(b)(1)(A) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(1)(A), when it passed an internal rule barring distribution of materials during the operating hours of the union's hiring halls, and when it threatened to have a dissident union member arrested if he violated the rule. *Laborers Union Local 324 (Associated General Contractors of California, Inc./Lawson Mechanical Contractors)*, 318 NLRB 589, 1995 WL 511372 (1995). The NLRB majority reasoned that maintenance of the rule, although valid on its face, and never enforced, interfered with the dissident

member's rights to express critical opinions about the union, in violation of his Section 7 rights, 29 U.S.C. § 157, because the union's subjective motive in adopting the rule was to curtail the dissident's anti-union activities. The dissenting NLRB members disagreed with the majority view that a rule which was neutral on its face, was in effect only at a limited place and during certain hours, and did not restrict any union member's ability to distribute literature at union meetings or outside the hiring hall, could be an unfair labor practice. We agree with the dissenting members.

## BACKGROUND

The union involved is Local 324, Laborers International Union of America ("Local 324" or "union"). The dissident member who brought the unfair labor practice charge is Douglas Murray, a vocal critic of the union's officials.

Murray is the editor and publisher of a newsletter, the "Pick & Shovel," containing articles written by him and letters to the editor written by others. In the "Pick & Shovel," Murray has criticized the leadership of Local 324 and has accused it of improper behavior. Murray has intermittently distributed this newsletter and other materials, such as labor-related course offerings at community colleges, at Local 324's hiring halls.

Local 324's hiring halls, like other union hiring halls, operate principally in the morning hours to provide work for members. During dispatch hours, the employees' names are called in order, as jobs become available. If an employee fails to respond when his or her name is called, the employee's name moves to the bottom of the list. While waiting for their names to be called, the employees usually sit around the hiring halls, reading, talking or playing cards.

The particular episode giving rise to this controversy occurred on June 23, 1989, when Murray was distributing literature at one of the hiring halls during dispatch hours. According to the Administrative Law Judge's ("ALJ") opinion, a union official, responding

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

to complaints from other union members that they were getting "tired" of Murray's constantly passing out critical literature, attempted to eject Murray from the union hall. Murray refused to leave unless the police were called. The official called them, but the police refused to arrest Murray, stating that they would not do so unless the union had a rule prohibiting the distribution of materials at that time and place.

In response, four days later, Local 324 passed the rule that is being challenged in this case. The rule provides that:

> During operating hours the offices and halls of [Local 324] are to be used only for legitimate [u]nion business. No person is to be permitted to use these premises for solicitation for any cause nor for distribution of literature.

Just after the union adopted the rule, a union official told Murray that if he violated it he would be arrested. The rule was never enforced; Murray apparently did not violate the rule by openly distributing materials during the hiring hall operating hours. He did, however, continue his distribution activities during union meetings and outside the union hall. On one occasion, a union official threatened to have him arrested if he did not stop distributing materials in the parking lot, but, for whatever reason, police were never summoned.

Murray filed a charge against Local 324 on July 7, 1989. After a hearing in December 1990, the ALJ found that the union violated the NLRA by enacting the rule and by threatening Murray with arrest in the hall and again in the parking lot. On August 25, 1995, the NLRB affirmed the ALJ's ruling.

The NLRB's order requires the union to cease and desist from the unfair labor practices found, and in any like or related manner restraining and coercing employees in the exercise of their Section 7 rights. Affirmatively, the NLRB's order requires Local 324 to rescind the no-solicitation/no-distribution rule and to post a remedial notice promising, *inter alia*, not to threaten to have union members arrested for distributing literature in or around the union halls. The union does not expressly take issue with the NLRB's determination, in which both the majority and the dissent agreed, that the threats to arrest Murray violated the NLRA. The union's main concern at this time is with its continuing inability to maintain a rule that will enable it to prevent disruption of its hiring halls during dispatch hours.

## ANALYSIS

■ There is no dispute that the union regarded Murray as an annoying member and that it wished to stop what it viewed as disruptive activities. It is also not disputed that Murray was critical of union officers' behavior, and that his critical activities were the impetus for the adoption of the rule. The question is how much, if at all, the NLRB is allowed to rely upon a union's reasons for passing a valid rule in order to determine that the union engaged in an unfair labor practice.

The key statute in this case, Section 8(b)(1)(A), 29 U.S.C. § 158(b)(1)(A), provides that it is an unfair labor practice for a union to "restrain or coerce" employees in the exercise of their Section 7 rights.[1] Under Section 7, an employee has the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ." 29 U.S.C. § 157. The Section 7 rights have long been understood to include the right of employees to be critical of the union and its management. *See, e.g., Operating Engineers Local 400 (Hilde Construction Co.),* 225 NLRB 596, 1976 WL 7268 (1976)(the right to "question the wisdom" of the leadership of one's union and to "pursue a course designed to align" the leadership with the member's own views is a Section 7 right); *East Texas Motor Freight,* 262 NLRB 868, 1982 WL 24659 (1982); *Nu–Car Carriers,* 88 NLRB 75 (1950), enfd. 189 F.2d 756 (3d Cir.1951); *Roadway Express,* 108 NLRB 874 (1954), enfd. sub nom. NLRB v.

---

1.  Section 8(b)(1)(A) provides that:
    (b) It shall be an unfair labor practice for a labor organization or its agents—
       (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein[.]
    29 U.S.C. § 158.

*International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 823,* 227 F.2d 439 (10th Cir. 1955).

At the same time, Section 8(b)(1)(A)'s proviso has been interpreted to mean that a union's right to govern its "purely internal affairs" is protected and therefore falls outside the scope of Section 8(b)(1)(A). *NLRB v. Retail Clerks Union, Local 1179,* 526 F.2d 142 (9th Cir.1975). *See NLRB v. Boeing Co.,* 412 U.S. 67, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973); *Scofield v. NLRB,* 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969); *NLRB v. Allis–Chalmers Mfg. Co.,* 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967).

It is thus not surprising that a recurring question under Section 8(b)(1)(A) is when the enforcement of a union rule is deemed to infringe upon the protected rights of union members because the rule does not concern "purely internal union affairs," and when it is insulated from unfair labor practice scrutiny. *See, e.g., Carpenters Union Local 25 v. NLRB,* 769 F.2d 574, 581 (9th Cir.1985); *Financial Institution Employees Local 1182 v. NLRB,* 752 F.2d 356, 362 (1984); *Retail Clerks,* 526 F.2d at 145. The leading Supreme Court case articulating the test for when a union may enforce a rule without violating Section 8(b)(1)(A) is *Scofield.* The Court in *Scofield* held that Section 8(b)(1)(A)

> leaves a union free to enforce a properly adopted rule which reflects a legitimate union interest, impairs no policy Congress has imbedded in the labor laws, and is reasonably enforced against union members who are free to leave the union and escape the rule.

*Scofield,* 394 U.S at 430, 89 S.Ct. at 1158. All sides agree that *Scofield* governs our analysis in this case. They disagree, however, on whether Local 324's rule satisfies the test and on whether enforcement of the rule

is a predicate to finding a violation of Section 8(b)(1)(A).

Local 324 persuasively argues that its non-distribution/ non-solicitation rule fully satisfies the *Scofield* test. The union points out that it has a legitimate interest in protecting the efficient and orderly operation of its hiring hall during dispatch hours, and that a rule serving such a purpose cannot possibly impair any Congressional policy imbedded in the labor laws. In addition, Local 324 argues that without enforcement, a facially valid rule can never amount to an unfair labor practice.

The NLRB and charging party acknowledge that, had this rule been promulgated in different circumstances, it would have satisfied the *Scofield* test. They contend, however, that because the motivation for the rule was to "silence" Murray, the adoption and maintenance of this particular rule constitutes an unfair labor practice because it impairs the free speech policy imbedded in Section 101(a)(2) of the Labor Management Reporting and Disclosure Act ("LMRDA").[2]

■ Unquestionably this rule is an internal rule; it regulates only the members' conduct with respect to the union and does not affect relationships with employers. *See Scofield,* 394 U.S. at 428, 89 S.Ct. at 1157 (citing *Allis–Chalmers,* 388 U.S. at 195, 87 S.Ct. at 2014) (distinguishing internal union rules from rules whose enforcement would have an external effect, such as interfering with the employee's relationship with his employer); *NLRB v. Construction and Bldg. Material Teamsters Local 291,* 633 F.2d 1295, 1299 (9th Cir.1980). We therefore conclude that on its face, the rule comes within Section 8(b)(A)(1)'s proviso, which is intended to protect the union's right to govern its own affairs. The NLRB may not make the union's motivation for passing a facially valid internal rule the determining factor in assessing the

---

**2.** Section 101(a)(2) of the LMRDA provides that [e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations. 29 U.S.C. § 411(a)(2).

validity of the rule. This would impermissibly intrude into the union's internal affairs.

The NLRB, in effect, by looking to the union's animus toward Murray, treated this rule as if it were something that it is not: a rule that prevents only Murray from distributing materials during hiring hall dispatch hours. Nothing in the language of the rule or the factual record supports such an interpretation. There is no indication that the rule has been discriminatorily enforced, or, indeed, that it has ever been enforced at all.

In concluding that the enactment of this rule alone constituted an unfair labor practice, the NLRB majority, and the ALJ, relied upon cases containing language that the mere maintenance of a rule, even without enforcement, may amount to an unfair labor practice. Those cases, however, involved a facially invalid rule, not a facially valid one. Moreover, none involved an inquiry into subjective union motivation. In *Bricklayers, Tuckpointers & Stone Masons Local 1 (Denton's Tuckpointing, Inc.)*, 308 NLRB 350, 1992 WL 215522 (1992), for example, the NLRB affirmed the ALJ's order in a case involving an 80% "closed shop" clause in the union's collective bargaining agreement. The clause, on its face, required the employer to recognize and maintain a hiring and retention preference based on union membership or non-membership. The ALJ found that, as a "closed shop" clause, the provision restrained and coerced employees in the exercise of their Section 7 rights and concluded that simply by maintaining an agreement containing such a provision, the union violated Section 8(b)(1)(A). The ALJ found no merit in the union's argument that because there was no proof of enforcement, there could have been no violation. The ALJ noted that

> [t]he essential vice in the contract provision ... is that its mere maintenance, requiring a member-employer ... to give preference in hiring and retention of employment to members of [the union], unlawfully restrains and coerces the Section 7 rights of all employees ... within the meaning of Section 8(b)(1)(A) of the Act.

Restrictions on resignations from the union are rules whose mere maintenance has also been found to constitute an unfair labor practice regardless of enforcement. *See, e.g.,* *Oil, Chemical & Atomic Workers Local 1–591 (Texaco Refining and Marketing, Inc.)*, 283 NLRB 2, 1987 WL 109293 (1987); *Engineers & Scientists Guild (Lockheed–California Co.)*, 268 NLRB 311, 1983 WL 24739 (1983). *Lockheed–California* held that the maintenance of unlawful restrictions on resignation restrains and coerces employees in their Section 7 rights, because the employees may be unaware of the provisions' unenforceability. The resignation restrictions may therefore violate Section 8(b)(1)(A) even if they are not enforced. In *Texaco Refining,* the union argued that the union had never attempted any disciplinary action against any former member pursuant to a resignation proscribed by the restriction, and that the NLRB had never ordered expunction of a similar rule unless the union had attempted to enforce the unlawful restriction. The NLRB rejected that argument and held that the provision constituted an unfair labor practice because the union could never place restrictions on the right of its members to resign from membership. *See also International Association of Machinists & Aerospace Workers Local 1414 v. Neufeld Porsche–Audi,* 270 NLRB 1330, 1984 WL 36546 (1984) (a restriction on resignation is always unlawful).

These cases, however, do not support the NLRB's conclusion in this case, because all of them concern rules that were facially invalid and unenforceable regardless of the circumstances surrounding their adoption. In this case, by contrast, the majority of the NLRB determined that the rule was invalid only because it was passed with the wrong subjective motivation, and not because it set forth any per se unlawful restrictions. We agree with the dissenting members that the rule on its face satisfies the *Scofield* test, and that, so long as it is not enforced in a way that impairs any overriding policy imbedded in the labor laws, it can be maintained without violating Section 8(b)(1)(A). The Board's order requiring the union to rescind the rule is not entitled to enforcement.

The remaining portion of the order requires in pertinent part that the union post a notice promising that it will not threaten members with arrest for distributing litera-

ture. The union does not contest that it made unlawful threats. That portion of the Board's order is entitled to be enforced.

ENFORCEMENT DENIED IN PART AND GRANTED IN PART.