NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GENERAL TEAMSTERS LOCAL NO.
439, INTERNATIONAL BROTHER-
HOOD OF TEAMSTERS, AFL–CIO,
Respondent.

No. 98–70253.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1999.

Filed May 26, 1999.

David Habenstreit, Elinor L. Merberg
(argued), National Labor Relations Board,
Washington, D.C., for the petitioner.

David A. Rosenfeld (argued), Ellen Mos-
cowitz, Van Bourg, Weinberg, Roger &
Rosenfeld, Oakland, California, for the re-
spondent.

Before: O'SCANNLAIN and
WARDLAW, Circuit Judges, and
BYRNE,* District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether a union violat-
ed the National Labor Relations Act by
fining a member for reporting the miscon-
duct of co-workers as required by his em-
ployer.

I

General Teamsters Local No. 439, Inter-
national Brotherhood of Teamsters, AFL–
CIO ("Local 439"), represents the Univer-
sity of the Pacific's ("UOP") forty to forty-
five custodial employees. Custodial per-
sonnel are organized into five crews, each
headed by a "lead person." The custodial
collective bargaining agreement, in effect

---

* The Honorable Wm. Matthew Byrne, Jr., Sen-
ior United States District Judge for the Cen-
tral District of California, sitting by designa-
tion.

from September 1993 through August 1996 ("1993 CBA"), provided that a lead person shall perform any work assigned to workers performing at their level within the bargaining unit. The Leadperson shall serve at the pleasure of the Employer but if relieved of Leadperson duties will continue to be employed at the appropriate level within the bargaining unit. Leadperson duties shall include *the authority to direct and recommend discipline of a bargaining unit worker* but shall not include the authority to hire or terminate workers except by recommendation to the next level of supervision.

(emphasis added). At all times relevant to this case, Gary Lynch managed the custodial staff.

In May 1995, Lynch promoted custodial employee Luis Rojas to a lead person position. At this time, Lynch told Rojas that his lead person responsibilities included "monitoring [unit] work and employees in his group" and that Rojas was to report "any problems he may have with personnel, such as unsafe work practices or taking a long break or non-performance of their job." Lynch testified that he demoted a lead person who failed to report such problems.

In July 1995, Rojas reported to Lynch that he had entered a custodial closet (a room for storage of custodial supplies) and found two custodial employees who were assigned to another building sitting in the closet. Rojas made no recommendation for discipline, but Lynch took disciplinary action against the two employees based on Rojas's report.

Shortly thereafter, union steward Byron Hisel filed a charge against Rojas under the union's Constitution and Local Bylaws for "turning in union members to management for disciplinary action against union members for personnal [sic] gain." On November 8, 1995, Local 439's executive board conducted a hearing on the charge. On December 4, 1995, the executive board issued its decision finding that Rojas "caused harm to his fellow members by bringing details to the attention of management." Local 439 fined Rojas $500, $400 of which was to be held in abeyance for one year on the condition that Rojas would not engage in such behavior again.

Rojas appealed Local 439's fine to the Teamsters Joint Council Executive Board ("Council"). The Council upheld Local 439's decision, stating:

As a lead person Brother Rojas has an obligation to report misconduct to management, but the [1993 CBA] as negotiated intended that the misconduct should be reported only if it was repeated.

With respect to the two ladies found out of their area, Brother Rojas exceeded his authority. If Brother Rojas had warned the employees before hand [sic] and/or asked them why they were at that location before reporting the [sic] management, then he would have been acting consistent with his job description. As it was because he did not question the women or warn them, he was overzealous and exceeded his authority and responsibility under the [1993 CBA]. Therefore the Board finds that the Local 439 Trial correctly found that Brother Rojas knowingly harmed a fellow member.

Apparently because of the Rojas incident, Local 439 asked for a clarification of the lead person's duties when it negotiated the 1996–1999 collective bargaining agreement ("1996 CBA"). Joe Kirim, the Director of UOP's Physical Plant, testified that, in response to Local 439's request, he drafted the following language to add to the lead person job description:

When a Lead Person observes an individual or individuals who appear to be violating the agreement, Lead Person will, when appropriate, inquire of the individuals regarding the situation. If the response is not acceptable or requires follow-up, complete investigation, then report his and every violation to

Supervisor and recommend disciplinary action. . . .

Local 439 accepted this amendment to the CBA.

Both Rojas and UOP filed unfair labor practice charges against Local 439 with the National Labor Relations Board ("NLRB" or "Board"). The Administrative Law Judge ("ALJ") conducted a hearing and concluded that Local 439 had violated Section 8(b)(1)(A) of the National Labor Relations Act ("Act") by fining Rojas for carrying out his duties as a lead person. The NLRB adopted the recommended order of the ALJ.

The NLRB timely applied to this court for enforcement of its order.[1]

## II

Section 7 of the Act grants employees the right to "join . . . labor organizations . . . and to engage in other concerted activities for the purpose of collective bargaining . . . and . . . the right to refrain from any or all [concerted] . . . activities. . . ." 29 U.S.C. § 157.[2] These rights are implemented by section 8(b)(1)(A), which provides that a union commits an unfair labor practice if it "restrain[s] or coerce[s] . . . employees in the exercise of" their section 7 rights. 29 U.S.C. § 158(b)(1)(A). However, it also provides that section 8(b)(1)(A) "shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." *Id.*

Thus, though a union is assured "freedom of self-regulation where its legitimate *internal* affairs are concerned," *NLRB v. Industrial Union of Marine and Shipbuilding Workers of Am.*, 391 U.S. 418, 424, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968) (emphasis added), the Supreme Court has interpreted section 8(b)(1)(A) as barring enforcement of internal union regulations that have an *external* effect, e.g., that affect a member's employment status, *see Scofield v. NLRB*, 394 U.S. 423, 428, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969); *NLRB v. Allis–Chalmers Mfg. Co.*, 388 U.S. 175, 195, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967) (distinguishing internal union rules from rules whose enforcement would have an external effect, such as interfering with the employee's relationship with his employer); *cf. Radio Officers' Union v. NLRB*, 347 U.S. 17, 40, 74 S.Ct. 323, 98 L.Ed. 455 (1954) (holding that "[t]he policy of the Act is to insulate employees' jobs from their organizational rights").

The NLRB argues that Local 439 violated section 8(b)(1)(A) by fining Rojas for reporting two co-workers who were out of their assigned work area when Rojas's employer required him to report such misconduct. The Board has held that a union commits an unfair labor practice if it disciplines a member who reports the work rule infractions of co-workers to his employer when that member is required to do so by his employer. *See, e.g., Industrial Union of Marine and Shipbuilding Workers of Am., Local No. 9*, 279 NLRB 617 (1986); *San Diego County Dist. Council of*

---

1. The NLRB's order requires Local 439 to: (1) cease and desist from the unfair labor practice found; (2) rescind the fine assessed against Rojas; (3) refund to Rojas any amounts paid in satisfaction of the fine; (4) make Rojas whole (i.e. reimburse lost wages, travel or other expenses he incurred in defending himself); (5) remove from its files all references to the proceedings against Rojas; (6) post copies of a remedial notice at its offices in Stockton, California, and at other places where notices to members are customarily posted. Local 439 does not challenge these requirements.

2. 29 U.S.C. § 157, provides in full:

   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

*Carpenters v. Hopeman Brothers, Inc.,* 272 NLRB 584 (1984); *Local 604, Int'l Chem. Workers,* 233 NLRB 1239 (1977), *enforced,* 588 F.2d 838 (7th Cir. Nov.2, 1978). The Board reasons that disciplining a member under these circumstances runs afoul of section 8(b)(1)(A) because it affects a member's employment status. *See Allis–Chalmers,* 388 U.S. at 195, 87 S.Ct. 2001 (Congress intended section 8(b)(1)(A) to "bar[ ] enforcement of a union's internal regulations [that] affect a member's employment status"); *cf. NLRB v. The Boeing Co.,* 412 U.S. 67, 73–74, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973) (under section 8(b)(1)(A), the NLRB has "authority to pass on those rules affecting an individual's employment status but not on his union membership status").

■ We conclude that the Board has reasonably interpreted section 8(b)(1)(A) as prohibiting unions from disciplining a member for reporting co-worker misconduct, where the member is required to do so by his employer. *See Pattern Makers' League of N. Am. v. NLRB,* 473 U.S. 95, 114, 105 S.Ct. 3064, 87 L.Ed.2d 68 (1985) ("Where the Board's construction of the Act is reasonable, it should not be rejected 'merely because the courts might prefer another view of the statute.'" (quoting *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979))); *see also Gardner Mechanical Servs., Inc. v. NLRB,* 115 F.3d 636, 640 (9th Cir.1997) ("This Court will uphold a Board rule as long as it is rational and consistent with the Act, ... even if we would have formulated a different rule had we sat on the Board." (internal quotation marks omitted)). A member's compliance with a union directive that is contrary to that member's job duties clearly affects that member's employment status in that it may cause him to lose his job or to be otherwise reprimanded. When a union punishes a member for complying with his employer's instructions, it is no longer regulating its purely internal affairs, but enforcing a rule with external effects, i.e., enforcing a rule that affects an employee's relationship with his employer, which is prohibited by section 8(b)(1)(A). *See Scofield,* 394 U.S. at 428, 89 S.Ct. 1154.

■ Here, the Board's finding that UOP required Rojas to report his co-workers' misconduct is supported by substantial evidence. *See NLRB v. District Council of Iron Workers,* 124 F.3d 1094, 1098 (9th Cir.1997) ("The order of the Board will be enforced if its findings of fact are supported by substantial evidence and if it correctly applied the law."). Lynch testified that, when he promoted Rojas to the lead person position, he instructed Rojas to report any problems Rojas had with his crew, including not performing their assigned tasks. Lynch further testified that he had demoted a lead person for failure to make such reports. Therefore, Rojas was merely complying with his employer's directions when he reported his co-workers' apparent work rule violations to Lynch. Thus, Local 439's punishment of Rojas had a direct impact on his employment status because Rojas faced the risk of demotion if he complied with Local 439's directive to refrain from reporting fellow union members to management.

We reject Local 439's argument that its discipline of Rojas was justified because Rojas violated the 1993 CBA by failing to warn the two employees before reporting their apparent misconduct to management. Nothing in the 1993 CBA required Rojas to warn the employees or to investigate their conduct before reporting the incident to management. Moreover, Local 439's reliance on Joe Kirim's testimony that the 1996 amendment to the lead person's job description was a "clarification" of the lead person's duties under the 1993 CBA is unavailing. Kirim also testified that Rojas had acted properly and that the amendment to the 1996 CBA did not represent UOP's understanding of a lead person's duties under the 1993 CBA. Under these circumstances, we uphold the Board's determination that Rojas did not violate the

1993 CBA by failing to warn his co-workers before reporting them to management.

### III

Because the union's discipline of Rojas affected his employment status, the Board properly held that Local 439 violated section 8(b)(1)(A) of the Act. Accordingly, the Board's order is

ENFORCED.