# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 16, 2011          Decided April 5, 2011

No. 10-1121

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL
513, AFL-CIO,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

---

Consolidated with 10-1137

---

On Petition for Review and Cross-Application for
Enforcement
of an Order of the National Labor Relations Board

---

*James P. Faul* argued the cause for petitioner.

*Amy H. Ginn*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Jill A. Griffin*, Supervisory Attorney.

Before: TATEL and BROWN, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Local 513 of the International Union of Operating Engineers challenges a National Labor Relations Board policy that has been followed for over thirty years, and which the Ninth Circuit has endorsed. The Board has held since 1977 that it is a *per se* unfair labor practice in violation of section 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A), for a union to discipline a union member who complied with an employer's safety rules. We agree with the union that the Board's policy does not accord with the National Labor Relations Act.

I

Two construction companies – Fred Weber, Inc. and ASI Constructors, Inc. – formed a joint venture, Ozark Constructors, LLC, to rebuild a hydroelectric facility in southeast Missouri. Local 513 represented Ozark's operating engineers, who were covered by two collective bargaining agreements – a National Maintenance Agreement and a separate agreement with Fred Weber, Inc. (the latter dealt with wages and benefits).

Mark Overton, a member of another International Union of Operating Engineers Local (in Albuquerque), was hired by Ozark because of his experience working on some of the specialized equipment needed on the project, experience which, apparently, Local 513's members lacked. Overton sought to transfer his membership to Local 513, which the union denied, although it did grant him a traveler permit authorizing him to work on the project.

Overton, one morning, noticed that a piece of machinery was not properly deployed (an outrigger was not fully extended), which was a safety violation. Ozark's safety rules – which are incorporated into the National Maintenance Agreement – oblige any employee to report to a supervisor safety violations. Indeed, an employee who does not do so is subject to discipline. Overton did report the safety violation and sought to determine who was responsible. After an investigation, another employee and Local 513 member was suspended for three days.

That led the union's business agent to file charges against Overton for gross disloyalty and conduct unbecoming a union member. (Apparently the union also objected to Overton's desire to bring in other experienced operating engineers rather than train the union's members.) The union fined Overton $2,500, which prompted Ozark to file an unfair labor practice charge against the union. The Board's general counsel issued a complaint alleging that the union violated section 8(b)(1)(A). That section precludes a union from "restrain[ing] or coerc[ing]" an employee in the exercise of his section 7 rights, with the proviso that a union may continue to "prescribe its own rules with respect to the acquisition or retention of membership therein." 29 U.S.C. § 158(b)(1)(A). And section 7 protects an employee's right to "to engage in . . . concerted activities" [or] ". . . to refrain from . . . such." *Id.* § 157.

An administrative law judge recommended that the Board find a violation. The judge relied on two theories: first, Overton was *deemed* to have refused to join other employees who apparently wished to ignore Ozark's safety orders, and therefore was refraining from concerted activity, even though no evidence of other employees' concerted refusal was adduced. Alternatively, even in the absence of a finding of concerted activity, the judge acknowledged that the Board had repeatedly held that when a union's disciplinary action affects an

employee's "employment relationship," it, *per se*, commits a section 8(b)(1)(a) violation.

The Board pointedly rejected the administrative law judge's effort to describe Overton's action as refraining from concerted activity. The Board instead relied on its long-time precedent finding a violation of section 8(b)(1)(A) where a union disciplines an employee for complying with an employer's safety rules, regardless of whether the employee acted in concert with other employees or in opposition to other employees acting in concert.

## II

The union's argument is rather simple and direct: without a finding of concerted activity (protected by section 7) on the part of Ozark's employees, it is analytically impossible for the Board to conclude that Overton either engaged in or refrained from engaging in such activities. Therefore, the union cannot be held to have restrained or coerced Overton in the exercise of his section 7 rights.

The Board nevertheless insists that it is entitled to interpret 8(b)(1)(A) to hold that a union violates that provision if a union disciplines an employee member for reporting a safety violation, which he has a duty to report, without regard to the presence of concerted activity. Although we give wide deference to the Board's interpretation of the general language of the National Labor Relations Act, *see Brockton Hosp. v. NLRB*, 294 F.3d 100, 103 (D.C. Cir. 2002), the Board here does not even purport to rely on an interpretation of the Act's language. Its brief – although not its opinion – relies for support of the Board's policy on two Supreme Court cases: *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175 (1967), and *Scofield v. NLRB*, 394 U.S. 423 (1969).

The Board asserts that *Allis-Chalmers* and *Scofield* prevent a union from enforcing its internal rules in such a fashion "to affect a member's employment status." *Allis-Chalmers*, 388 U.S. at 195; *see also Scofield*, 394 U.S. at 428-30. Relying on these cases is quite a reach. In *Allis-Chalmers*, a sharply divided Court held that a union could fine union members who cross a picket line (and seek court enforcement); that section 8(b)(1)(A) – in light of the proviso – could not be read to preclude an internal rule that restrained an employee from refraining from concerted activity unless the union rule affected his or her employment relationship. *Allis-Chalmers*, 388 U.S. at 195. And that meant, as *Scofield*[1] indicated, action that would lead an employer to discipline or discharge an employee. *Scofield*, 394 U.S. at 428-29, 436 & n.5 (a claim that could be true in our case). But – and this is the crucial distinction – in both cases, before even considering whether the proviso governed, the Court recognized that concerted activity was present. *See Scofield*, 394 U.S. at 426-27, 435; *Allis-Chalmers*, 388 U.S. at 178-79. Therefore, the Board quite obviously overreads those opinions by suggesting that they permit it to dispense with a finding of engaging in concerted activity, or refraining from concerted activity.

To be sure, the Board's reading of section 8(b)(1)(A) and its interpretation of *Allis-Chalmers* and *Scofield* have been accepted (rather summarily) by the Ninth Circuit in *Teamsters Local No. 439, Int'l Bhd. of Teamsters, AFL-CIO*, 175 F.3d 1173 (9th Cir. 1999). The Ninth Circuit, however, ignored the context of *Allis-Chalmers* and *Scofield* that we find dispositive. Accordingly, our

---

[1] In *Scofield*, the Court observed that the union's rule was not inconsistent with the collective bargaining agreement; indeed the company had been unsuccessful in gaining union acquiescence with its policy. 394 U.S. at 424-25.

view, reached reluctantly, is that the Ninth Circuit's opinion is not persuasive.

The union's brief – in anticipation of a potential argument the Board might have made – sought to distinguish another Supreme Court case, *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822 (1984). In that case, the Court held that an employee fired by an employer for refusing to drive what he thought was an unsafe truck had been exercising his section 7 rights because the collective bargaining agreement gave him the right to decline to operate unsafe equipment. Even though no other employee joined with his protest, the Board and Supreme Court concluded that an employee who relies on a collective bargaining agreement right – explicitly or implicitly – is engaging in concerted activity because the agreement itself is a product of concerted activity, i.e., collective bargaining. *City Disposal*, 465 U.S. at 832-33. The administration of the agreement is a continuation of the collective bargaining process.

Local 513 argued that *City Disposal*'s treatment of an employee's *right* under a collective bargaining agreement as concerted activity did not extend to a *duty* – such as Ozark's safety regulations – even if imposed by the contract. We note, however, that the failure to comply with that duty, incorporated into the collective bargaining agreement, could lead to an employee's discipline or discharge, which it might be argued interferes with the employee's employment relationship within the meaning of *Allis-Chalmers*. We need not consider the effect of *City Disposal* here because the Board, by pointedly rejecting the administrative law judge's effort to tease a finding of concerted activity out of the facts of this case, has relied only on its broad *per se* policy. To make its position crystal clear, the Board's brief explicitly declines to rely on *City Disposal*. Under those circumstances, it would be improper for us to remand to the Board to consider an alternative ground that it has explicitly

declined to do. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).

## III

We recognize that the Board has followed for more than thirty years the interpretation of section 8(b)(1)(A) that it advances here. But consistency alone cannot save the Board. We can find no support in sections 7 and 8(b)(1)(A) for the Board's decision, and we find it rather telling that the Board has never attempted a detailed explanation of how its interpretation of section 8(b)(1)(A) is consistent with the National Labor Relations Act. Accordingly, the petition for review is

*granted.*[2]

---

[2] The cross-application for enforcement is denied.